UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLOTTE WINELAND, Individually, and SUSAN WINELAND, as Personal Representative of the Estate of JOHN DALE WINELAND, Deceased,<br><br>Plaintiffs,<br>v.<br><br>**AIR & LIQUID SYSTEMS CORPORATION** (*sued individually and as successor-by merger to* BUFFALO PUMPS, INC.);<br>**CARRIER CORPORATION**;<br>**CBS CORPORATION** (*f/k/a* VIACOM, INC., *successor by merger with* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION, *successor-in-interest to* BF STURTEVANT);<br>**CRANE CO.**;<br>**FLOWSERVE US, INC.** (*sued as successor-in-interest to* ANCHOR DARLING VALVE COMPANY, BW/IP INTERNATIONAL, INC., DURCO INTERNATIONAL, *and* EDWARD VALVE, INC.);<br>**GENERAL ELECTRIC COMPANY**;<br>**INGERSOLL RAND COMPANY**;<br>**WARREN PUMPS, LLC** (*sued individually and as successor-in-interest to* QUIMBY PUMP COMPANY, INC.); and<br>**DOES 1–350 INCLUSIVE**;<br><br>Defendants. | No. 2:19-cv-00793<br><br>COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP<br><br>JURY DEMAND |

## I.  PARTIES

1.1 Plaintiff Susan Wineland, Personal Representative of the estate of Decedent John Dale Wineland, resides in California.

1.2 Plaintiff Charlotte Wineland is the surviving wife of Decedent John Dale Wineland and is suing on behalf of her individual claim for loss of consortium.

1.3 Plaintiffs request a jury demand as permitted under Local Civil Rule 38 and Federal Rule of Civil Procedure (FRCP) 38.

1.4 The Defendants are corporations incorporated and with their principal places of business outside the States of Washington and California.

1.5 Defendants and/or their predecessors-in-interest (hereinafter collectively referred to as "Defendants") are corporations who, at all times relevant herein, manufactured, sold, produced, distributed or supplied asbestos-containing products or products that were used in conjunction with asbestos.

## II.   JURISDICTION

2.1 Plaintiffs' claims in this case arise out of or relate to Defendants' contacts with Washington that arose or existed at the time of Mr. Wineland's asbestos exposure.

2.2 This Court has diversity jurisdiction over the above-captioned cause because the amount in controversy exceeds $100,000.00 and the Plaintiffs and Defendants are residents of different states.

2.3 Plaintiff Charlotte Wineland is a resident of San Diego County, California. Plaintiff Susan Wineland is a resident of Los Angeles County, California.

2.4 Defendant Air & Liquid Systems Corporation is a Pennsylvania Corporation with a principal place of business in Pennsylvania.

2.5 Defendant Carrier Corporation is a Delaware Corporation with a principal place of business in Florida.

2.6 Defendant CBS Corporation is a Delaware Corporation with a principal place of business in New York.

2.7 Defendant Crane Corporation is a Delaware Corporation with a principal place of business in Connecticut.

2.8 Defendant Flowserve US, Inc. is a Delaware Corporation with a principal place of business in Texas.

2.9 Defendant General Electric Company is a New York Corporation with a principal place of business in Connecticut.

2.10 Defendant Ingersoll Rand Company is a New Jersey Corporation with a principal place of business in North Carolina.

2.11 Defendant Warren Pumps, LLC is a Delaware Corporation with a principal place of business in Massachusetts. Warren Pump, LLC's only member is IMO Industries, Inc., a Delaware Corporation.

### III.   FACTS

3.1 Plaintiffs' Decedent, John Dale Wineland, was a fireman and engineman while serving in the United States Navy from 1963 through 1980. He worked with Defendants' equipment aboard the USS Dynamic (MSO-432) from 1963 through 1966; the USS Pledge (MSO-492) from 1966 through 1967; the USS Loyalty (MSO-457) from 1970 through 1972; the USS Tuscaloosa (LST-1187) from 1972 through 1974; and the USS Esteem (MSO-438) from 1978 through 1980. Decedent John Dale Wineland worked at several shipyards, including Lake Union Drydock Company in Seattle, Washington; Puget Sound Naval Shipyard in Bremerton, Washington; and Todd Shipyard in Seattle, Washington.

3.2   An engineman, Decedent John Dale Wineland was tasked with operating and maintaining the equipment aboard these and other vessels, including but not limited to generators, pumps, turbines, forced draft blowers, and valves. This equipment was designed by the manufacturers to work with asbestos-containing components (gaskets, packing, and insulation) that would wear-out and have to be replaced on a routine basis. Additionally, this equipment was designed and intended to be insulated with asbestos-containing insulation. The equipment would not function as intended without the asbestos-containing components

or asbestos-containing insulation. Decedent John Dale Wineland was exposed to asbestos from asbestos-containing components incorporated into this equipment and asbestos containing insulation while performing routine maintenance in machine spaces, including engine rooms, aboard the ships on which he served.

3.3     These asbestos-containing components and/or insulation were supplied with the equipment when it was installed new aboard the vessel. Replacement parts would be supplied by the equipment manufactures in four ways: (1) with the purchase of the original equipment by the U.S. Navy; (2) by direct shipment to the ship or shipyard where repairs or maintenance were being performed; (3) through shipment to the regional Naval Supply Centers; or (4) by shipment to the U.S. Navy's Inventory Control Point in Mechanicsburg, Pennsylvania.

3.4     As a direct and proximate result of his exposure to asbestos products as described above, Decedent John Dale Wineland developed and was diagnosed with mesothelioma, a fatal cancer of the lining of the lung caused by asbestos exposure.

3.5 Plaintiffs provide the following information:

A.   Specific Disease:        Mesothelioma

B.   Date of Diagnosis:       On or about April 6, 2018

C.   Occupations:             Navy Engineman

D:   Dates of Employment:     US Navy, 1963 through 1980

E.   Military:                US Navy:
                              USS Dynamic (MSO-432) 1963-1966
                              USS Pledge (MSO-492) 1966-1967
                              USS Loyalty (MSO-457) 1970-1972
                              USS Tuscaloosa (LST-1187) 1972-1974
                              USS Esteem (MSO-438) 1978-1980
                              Harbor Boat, Terminal Island, Los Angeles, California
                              Lake Union Drydock Company, Seattle, Washington
                              Puget Sound Naval Shipyard, Bremerton, Washington
                              Todd Shipyard, Seattle, Washington

F:	Approximate dates of exposure:	1963 through 1980

## IV.	LIABILITY

4.1 Plaintiffs claim liability based upon the theories of product liability, including strict product liability under Section 402A of the Restatement (Second) of Torts, and negligence. The liability-creating conduct of Defendants consisted, <u>inter alia</u>, of negligent and unsafe design; failure to properly inspect, test, warn, instruct, monitor and/or recall; failure to substitute safe products; producing, marketing or selling unreasonably dangerous or extra-hazardous and/or defective products, products not reasonably safe as designed, products not reasonably safe for lack of adequate warning, products with misrepresentations of product safety, and/or products which were specifically designed for asbestos-containing materials such that no other material could be utilized in those systems.

4.2 With regard to the naval equipment manufacturers of compressors, pumps, valves, engines, generators, turbines, motors, steam traps, and other equipment [hereinafter, "Equipment Defendants"], these defendants designed, intended, specified, incorporated into, and required the use of asbestos gaskets, packing, and insulation in and on their equipment and/or they sold replacement asbestos parts that were required for their equipment to operate at high temperatures or high pressures and the routine maintenance and repair of that equipment exposed Decedent to asbestos dust.

4.3 The Decedent relied on the Equipment Defendants' instructions to warn him of the dangers of the products they instructed him to use with their products. The Equipment Defendants either possessed actual knowledge of the dangers of asbestos or should have known of those dangers yet failed to warn Decedent. The Equipment Defendants knew or should have reasonably foreseen that their equipment would require routine repairs and maintenance that would cause end-users like Decedent to be exposed to harmful asbestos dust.

4.4 The Equipment Defendants manufactured, rebranded, distributed, sold, and otherwise

placed into the stream of commerce various asbestos-containing products, including, but not limited to, asbestos-containing compressors, pumps, valves, engines, generators, turbines, motors, steam traps, and other equipment. Defendants' asbestos-containing compressors, pumps, valves, engines, generators, turbines, motors, steam traps, and other equipment contained, among other things, asbestos-containing gaskets, packing, cloth, blankets, or board when sold, which were designed, expected and intended to wear out and be replaced on a regular basis during the lifetime of the equipment. Furthermore, Defendants knew, expected, and intended that the asbestos-containing components of its compressors, pumps, valves, engines, generators, turbines, motors, steam traps, and other equipment were designed, expected, and intended to wear out and be replaced during the useful lifetime of these compressors, pumps, valves, engines, generators, turbines, motors, steam traps, and other equipment and would be replaced with additional asbestos-containing replacement parts and that the hazards to the consumer working with or around the asbestos-containing replacement parts would be identical to those of working with the original parts. Finally, Defendants profited from selling asbestos-containing pumps, valves, turbines, compressors and other equipment that were designed to outlive the first asbestos-containing gaskets, packing, blankets, cloth, and boards that were provided with them. That is, by designing and manufacturing a piece of equipment whose body, engine and other components were designed and constructed to outlive the first set of asbestos-containing gaskets, packing, blankets, cloth, and board supplied with the original piece of equipment, Defendants were able to sell their asbestos-containing compressors, pumps, valves, engines, generators, turbines, motors, steam traps, and other equipment for far more money and profit than they would have been able to sell such equipment that only lasted as long as the first set of asbestos-containing gaskets, packing, blankets, cloth, and board. Additionally, the Defendants insured against the dangers of the expected and intended uses of their asbestos-containing compressors, pumps, valves, engines, generators, turbines, motors, steam traps, and other equipment, including but not limited to the dangers at

issue in this case.

4.5 Most specifically with respect to Plaintiffs' state tort law failure-to-warn claims, Plaintiffs allege that no U.S. agency, officer, or person prohibited or forbid any Defendant in this case from issuing and placing warnings on or with its products. Such a showing is mandatory for any defendant to meet the *Boyle* test. All such claims that legitimately implicate such a defense, in the unlikely event that they exist and are factually supported, are not asserted and are hereby expressly and preemptively disclaimed.

4.6 Moreover, as discussed in *In re Hawaii Federal Asbestos Case*, 960 F.2d 806 (9th Cir. 1992) and consistent with the record presented in that case, there is simply no admissible evidence that the U.S. Navy ever precluded or constrained any equipment manufacturers' ability to warn end-users, like Decedent.

4.7 To the contrary, MIL-STD-129, the Navy's standard on labeling, *required* equipment contractors with the Navy to warn of harmful dusts and hazardous substances which the equipment contractors chose not to do.

4.8 Moreover, the U.S. Government's official position in litigation is that MIL-STD-129 permitted Navy contractors to warn about asbestos. GAP Corp. sued the United States in 1983 for "implied contractual indemnification for damages sustained as a result of actions by or on behalf of shipyard workers to recover for injuries or death due to exposure to asbestos." *GAF Corp. v. United States*, 19 Cl. Ct. 490, 490–91 (Cl. Ct. 1990), *aff'd*, 931 F.2d 947 (Fed. Cir.), *cert. denied*, 502 U.S. 1071 (1992). Therefore, no conflict exists between the duties to warn under state law.

///

## V.   DAMAGES

5.1 As a proximate result of Defendants' negligence and/or product liability, Plaintiffs' Decedent John Dale Wineland sustained pain, suffering, disability, and subsequent death in an amount not now known, but which will be proven at trial.

5.2 Plaintiffs' Decedent John Dale Wineland also sustained medical expenses and economic losses in an amount to be proven at trial.

5.3 Plaintiff Charlotte Wineland brings this cause of action against all Defendants for the loss of spousal relationship as a result of Decedent John Dale Wineland's illness and subsequent death, including a loss of emotional support, love, affection, care, society, services, consortium, companionship, and assistance in an amount to be proven at trial. Plaintiff Charlotte Wineland has also sustained loss of economic support and services due to Decedent John Dale Wineland's illness and subsequent death, in an amount to be proven at trial.

5.4 Plaintiff Susan Wineland and Decedent's other children Corrine Wineland, Isaiah Wineland, and Zachary Wineland have sustained loss of a parental–child relationship as a result of John Dale Wineland's illness and death, including the loss of emotional support, love, care, society, consortium, companionship, maintenance, support, advice, counsel and guidance in an amount to be proven at trial.

Plaintiffs and the estate are entitled to damages for Decedent John Dale Wineland's physical pain and suffering he endured up until his death; mental anguish he suffered due to his impending death; physical impairment and loss of enjoyment of life; disfigurement; reasonable and necessary medical, funeral and other expenses incurred as a result of his mesothelioma; and the mental anguish of each of the family members for the emotional damage to the family caused by Decedent John Dale Wineland's suffering and subsequent death.

WHEREFORE, Plaintiffs pray for judgment against the Defendants and each of them as follows:

1. For general and special damages specified above, including pain, suffering, mental anguish, disability, loss of consortium, and wrongful death;

2. For all wrongful death and survival damages recoverable by Washington law, including all damages provided for in RCW 4.20.046 and RCW 4.20.060;

3. Past and future loss of care, love, maintenance, services, support, advice, counsel, society, and consortium, which Plaintiff Charlotte Wineland and Decedent's children, Corrine Wineland, Susan Wineland, Isaiah Wineland, and Zachary Wineland, would have received from Decedent John Dale Wineland before his illness and death caused by his exposure to asbestos;

4. For medical and related expenses, economic losses, and funeral expenses, all of which will be proven at the time of trial;

5. For Plaintiffs' costs and disbursements herein;

6. For prejudgment interest in the amount to be proven at trial; and

7. For such other relief as the Court deems just.

DATED this 24th day of May, 2019.

WEINSTEIN COUTURE PLLC

*s/ Alexandra Caggiano*
*s/ Brian Weinstein*
Benjamin R. Couture, WSBA No. 39304
Brian D. Weinstein, WSBA No. 24497
Alexandra B. Caggiano, WSBA No. 47862
601 Union Street, Suite 2420
Seattle, Washington 98101
Telephone: (206) 508-7070
Facsimile: (206) 237-8650
Counsel for Plaintiffs

And

FROST LAW FIRM, PC

*s/ Scott Frost*
Scott L. Frost, WSBA #54685
scott@frostlawfirm.com
273 West 7th Street
San Pedro, CA 90731
Telephone: (866) 353-6376
Fax: (310) 861-8803