UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLOTTE WINELAND, Individually, and SUSAN WINELAND, as Personal Representative of the Estate of JOHN DALE WINELAND, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, *et al.*,<br><br>Defendants. | Cause No. C19-0793RSL<br><br>ORDER DENYING TODD SHIPYARD'S DAUBERT MOTION (Dkt. # 344) |

This matter comes before the Court on "Defendant Puget Sound Commerce Center, Inc.'s *Daubert* Motion to Exclude Expert Testimony of Captain Arnold Moore; Steven Paskal, CIH; David Zhang, M.D.; and Charles Ay." Dkt. # 344.[1] In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony from reaching the jury. The gatekeeping function applies to all expert testimony, not just testimony based on the hard sciences. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

To be admissible, expert testimony must be both reliable and helpful. The reliability of

---

[1] Other defendants joined the motion. *See* Dkt. # 374, 379, 381, 382, 386, 388, and 399. Some of the joining defendants have since settled with plaintiffs.

ORDER DENYING TODD SHIPYARD'S
DAUBERT MOTION (Dkt. # 344) - 1

expert testimony is judged not on the substance of the opinions offered, but on the methods employed in developing those opinions. *Daubert*, 509 U.S. at 594-95. In general, the expert's opinion must be based on principles, techniques, or theories that are generally accepted in his or her profession and must reflect something more than subjective belief and/or unsupported speculation. *Daubert*, 509 U.S. at 590. The testimony must also be "helpful" in that it must go "beyond the common knowledge of the average layperson" (*U.S. v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002)) and it must have a valid connection between the opinion offered and the issues of the case (*Daubert*, 509 U.S. at 591-92). Plaintiffs, as the parties offering Captain Moore, Mr. Paskal, Dr. Zhang, and Mr. Ay as experts, have the burden of proving both the reliability and helpfulness of their testimony. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). Having reviewed the memoranda, declarations, and exhibits submitted by the parties, including plaintiffs' sur-reply,[2] the Court finds as follows:

**A. Captain Arnold Moore**

Puget Sound Commerce Center, f/k/a Todd Shipyard, does not challenge Captain Moore's experiential familiarity with naval warships and their machinery, the operation and maintenance of steam propulsion plants, the repair and overhaul of Navy ships, or the role of Enginemen aboard naval ships. Nor does Todd Shipyard take issue with Captain Moore's impressive educational and professional credentials. *See* Dkt. # 500-2 at 2-3. Rather, defendant maintains that Captain Moore should be precluded from testifying in this matter because he cannot describe what work plaintiffs' decedent, John Wineland, did on a particular ship on a particular

---

[2] This matter can be decided on the papers submitted. The parties' requests for oral argument are therefore DENIED.

ORDER DENYING TODD SHIPYARD'S
DAUBERT MOTION (Dkt. # 344) - 2

day or what work was performed by others in Mr. Wineland's presence on a particular ship on a particular day. Todd Shipyard does not object to any particular statement contained in Captain Moore's report, however, nor does it identify an opinion offered by Captain Moore that requires the level of detail defendant demands.

Captain Moore intends to offer testimony regarding, *inter alia*, the "maintenance practices and conditions aboard Navy ships." Dkt. # 500-2 at 4. In order to make this testimony relevant to the issues in this case, Captain Moore reviewed Navy personnel records and other records pertinent to Mr. Wineland. This review showed when Mr. Wineland was in the Navy, to what ships he was assigned, what roles he filled, and, to some extent, what tasks he performed. With regards to Todd Shipyard, these records disclosed that Mr. Wineland was at the shipyard in 1974 aboard the USS TUSCALOOSA where he "contributed significantly to the preparation of an ROH (Regular Overhaul) work package for his work centers and spent many long hours ensuring work was accomplished in the yards to his high standards of workmanship." Dkt. # 500-2 at 6. Captain Moore also reviewed the declaration of a shipmate of Mr. Wineland who reported that the diesel engines on the USS TUSCALOOSA were maintained by those assigned to the engine room, were insulated with heat blankets and had exhausts that were covered with asbestos insulation, and that the work of removing and replacing packing and gaskets on the valves, pumps, and engines was regular, on-going, and routine. Dkt. # 500-2 at 17.

Based on his experiential and technical expertise and his review of naval records related to Mr. Wineland and the ships on which he served, Captain Moore intends to offer the following opinions that appear to have some relevance to the claims asserted against Todd Shipyard:

(1) It is extremely likely that most of the insulation on heated systems on the USS

ORDER DENYING TODD SHIPYARD'S
DAUBERT MOTION (Dkt. # 344) - 3

TUSCALOOSA during the time it was at Todd Shipyard contained asbestos material.

(2) The removal and replacement of gaskets and packing on Navy ships in the 1960s and 1970s during routine preventative maintenance and repairs often produced airborne asbestos fibers. Those fibers were not controlled and settled on horizontal surfaces in densely-packed machinery spaces.

(3) Enginemen, such as Mr. Wineland, worked in engine rooms and other assigned spaces while ships were in the shipyard, overhauling valves, small pumps, and diesel engines, cleaning the spaces, and monitoring the work of shipyard personnel.

(4) The activities described in Mr. Wineland's evaluation from the time the USS TUSCALOOSA was at Todd Shipyard shows that "Mr. Wineland visited spaces where Todd [S]hipyard workers were performing repairs on the machinery on TUSCALOOSA quite often in order to observe these repairs and to inspect repaired equipment." Dkt. # 500-2 at 12.

These opinions are based on facts disclosed in the Navy records, the shipmate declaration, and Captain Moore's technical and other specialized knowledge. The opinions will likely be helpful to the fact-finder in understanding, *inter alia*, what Mr. Wineland experienced as an Engineman in the Navy in the mid-1970's on the USS TUSCALOOSA, the tasks Mr. Wineland performed or which were performed in the engine room where he was assigned, and the extent of his exposure to asbestos-containing dust, both while at sea and at Todd Shipyard.

Todd Shipyard's argument appears to be that the opinions are unreliable because there is no eyewitness testimony regarding what Mr. Wineland did while the USS TUSCALOOSA was at Todd Shipyard. Dkt. # 506 at 3. There is, however, a written record of Mr. Wineland's activities while the vessel was being overhauled, which Todd Shipyard ignores in order to argue

ORDER DENYING TODD SHIPYARD'S
DAUBERT MOTION (Dkt. # 344) - 4

that Captain Moore's conclusions are wholly unfounded. Considering the record as a whole, however, the Court finds that Captain Moore's method of evaluating the available evidence in light of his experiences and expertise is reliable and that the information will be helpful to the jury.

**B. Steven Paskal, Certified Industrial Hygienist ("CIH")**

Defendant seeks to exclude the testimony of Mr. Paskal, plaintiffs' industrial hygienist, on the grounds that he does not have factual data regarding the frequency, intensity, or duration of Mr. Wineland's asbestos exposure while the USS TUSCALOOSA was at Todd Shipyard and is therefore unable to provide cumulative exposure estimates for that time period. Dkt. # 344 at 6-7. For the reasons set forth above, Captain Moore's opinions regarding Mr. Wineland's exposure to asbestos and the conditions and frequency of such exposure while the USS TUSCALOOSA was docked at the shipyard are admissible under *Daubert*. Todd Shipyards has failed to identify any rule of law that would preclude Mr. Paskal from relying on Captain Moore's conclusions when forming opinions within his own areas of expertise about the rate of Mr. Wineland's exposure to asbestos. With regards to the cumulative exposure objection, a review of Mr. Paskal's expert report shows that the absence of cumulative exposure estimates does not make the opinions Mr. Paskal is offering unhelpful or unreliable.

Mr. Paskal intends to testify regarding "rudimentary" industrial hygiene concepts and concerns where a carcinogenic dust, such as asbestos, is encountered. Dkt. # 500-4 at 2. He will inform the jury as to how asbestos reacts when released into the air, the risks it poses to human health, and how to mitigate those risks. Relying on his experience as an industrial hygienist for the Navy, Mr. Paskal also intends to testify that Mr. Wineland was exposed to asbestos during

his time in the Navy. This opinion is based on Captain Moore's testimony regarding Mr. Wineland's activities and the facts that (a) the packing and gaskets with which the decedent worked "virtually always comprised asbestos" and (b) the work practices of the time (which Mr. Paskal describes) were "not calculated to minimize/contain dust release." Dkt. # 500-4 at 5. Finally, Mr. Paskal will opine that the type of work in which Mr. Wineland was engaged (or which was performed by others in his presence) resulted in "asbestos exposures that ranged from hundreds to millions of times greater (and in addition to) ambient pollution levels in even the most polluted areas" and that "[e]ach of these exposures substantially increased [Mr. Wineland's] risk of contracting lung and mesothelial cancer." Dkt. # 500-4 at 6.

      Todd Shipyard does not challenge Mr. Paskal's expertise regarding evolving industrial hygiene concepts related to asbestos, the standards or methods used to measure workplace exposure, the work and working conditions of naval enginemen, or the exposure rates associated with such work. Nor does defendant suggest that this information would be unhelpful to the jury. Rather, Todd Shipyard takes issue with the fact that Mr. Paskal does not offer an opinion regarding Mr. Wineland's cumulative exposure.[3] Defendant does not attempt to show how the absence of such an opinion makes Mr. Paskal's testimony either unhelpful or unreliable.

      In reply, defendant makes clear that its objection is based not on the absence of a cumulative exposure calculation, but on the expert's leap from estimated exposure levels to the conclusion that the exposure Mr. Wineland experienced at Todd Shipyards "was a substantial

---

[3] Mr. Paskal states that his expertise allows him to make principled estimates of exposure levels, on an order of magnitude basis, based on the type of work performed. If he had to provide an estimate of cumulative exposure, he would need to know the total time spent performing the work. He does not have that information and therefore has not done a cumulative exposure calculation. Dkt. # 500-4 at 3 n.4.

ORDER DENYING TODD SHIPYARD'S
DAUBERT MOTION (Dkt. # 344) - 6

factor in the development of his mesothelioma." Dkt. # 506 at 4. Defendant specifically argues that "there is a lack of evidence to support any opinions on frequency, duration, and intensity of exposures" from which Mr. Paskal could testify that the exposure was a substantial contributing factor to Mr. Wineland's mesothelioma as required by *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1176 (9th Cir. 2016). In *McIndoe*, the Ninth Circuit found insufficient evidence that, while it may give rise to an inference that plaintiff was actually exposed to asbestos that had been originally installed by the shipbuilder defendants, did not show a high enough level of exposure that the jury could reasonably conclude that the asbestos was a substantial factor in the injury. *Id.* (quoting *Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005)). Here, on the other hand, Captain Moore's admissible testimony regarding the work Mr. Wineland performed while the USS TUSCALOOSA was at Todd Shipyards, the circumstances under which that work was performed, and the frequency of the work is, in fact, evidence of the frequency and duration of the exposure on which Mr. Paskal basis his opinions regarding intensity. The Court finds the expert's opinions to be both reliable and helpful.

**C. David Y. Zhang, M.D., Ph.D., MPH**

Dr. Zhang is a licensed physician specializing in Pathology and Occupational Medicine and has conducted extensive basic and clinical research of various cancers, including mesothelioma and lung cancers. He will opine that, "[b]ased on Mr. Wineland's history of asbestos exposure, clinical presentation, radiological findings, death certificate, and pathology diagnoses, . . . Mr. Wineland had asbestos-related pleural malignant mesothelioma." Dkt. # 500-5 at 24. *See also* Dkt. # 500-5 at 34. As was the case with Mr. Paskal, Todd Shipyard does not challenge Dr. Zhang's expertise in the areas about which he will testify, but argues that he has

ORDER DENYING TODD SHIPYARD'S
DAUBERT MOTION (Dkt. # 344) - 7

no factual basis for his conclusions that Mr. Wineland was exposed to asbestos and that the exposure was a substantial contributing factor to his injuries. These arguments fail for the reasons stated above with regards to Mr. Paskal: Dr. Zhang has the expertise to evaluate Mr. Wineland's exposure history at Todd Shipyard and to offer his opinion as to whether the exposure was significant enough to cause asbestos-related pleural malignant mesothelioma. This testimony is neither unsound nor unhelpful given the factual evidence of Mr. Wineland's activities, Captain Moore's opinions regarding the extent and frequency of his exposure to asbestos while the USS TUSCALOOSA was at Todd Shipyard, and Mr. Paskal's estimated exposure levels during that time period.

**D. Charles Ay, Certified Asbestos Consultant**

Mr. Ay worked as an asbestos insulator in the shipyard industry from 1960 to 1981, working in all areas of hundreds of Navy ships, including the boiler and engine rooms. Since that time, Mr. Ay has been trained and employed in asbestos detection, testing, and abatement. Without identifying any opinion it finds objectionable, defendant argues that Mr. Ay should be precluded from testifying because he never worked at Todd Shipyard or on the USS TUSCALOOSA and his testimony is, therefore, irrelevant.

The Court disagrees. Based on his experiences working with and around asbestos and his subsequent education, Mr. Ay will testify regarding the presence of asbestos in thermal pipe insulation on high temperature/pressure systems, the uses, application, and removal of asbestos-containing products during the 1970's, the consistency of those uses, applications, and methods of removal across various industries through 1975, whether the various products release asbestos when handled in the standard ways, and the concentrations of asbestos fibers emitted by standard

ORDER DENYING TODD SHIPYARD'S
DAUBERT MOTION (Dkt. # 344) - 8

handling practices. This testimony is based primarily on Mr. Ay's experiences and education and will be helpful to a jury unfamiliar with asbestos, its uses, the way it is released into the air, and the concentrations resulting from various activities. Defendant provides no reason to suspect that asbestos was used, applied, and removed on Navy ships that were overhauled in the shipyards where Mr. Ay worked in a manner that was materially different from the way it was used, applied, and removed at Todd Shipyard. Mr. Ay's testimony suggests exactly the opposite. To the extent such differences exist, they go to the weight of the evidence, rather than its admissibility.

For all of the foregoing reasons, Todd Shipyard's motion to exclude the testimony of Captain Moore, Mr. Paskal, Dr. Zhang, and Mr. Ay (Dkt. # 344) is DENIED.

Dated this 30th day of November, 2020.

Robert S. Lasnik
United States District Judge