UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLOTTE WINELAND, Individually, and SUSAN WINELAND, as Personal Representative of the Estate of JOHN DALE WINELAND, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, *et al.*,<br><br>Defendants. | Cause No. C19-0793RSL<br><br>ORDER GRANTING PUGET SOUND COMMERCE CENTER'S MOTION FOR SUMMARY JUDGMENT (DKT. # 302) |

This matter comes before the Court on "Defendant Puget Sound Commerce Center, Inc. FKA Todd Shipyards Corporation's Amended Motion for Summary Judgment/Partial Summary Judgment [Fed. R. Civ. P. 56(a)]." Dkt. # 302.[1] Plaintiffs allege that their decedent, John Dale Wineland, worked at Todd Shipyards in 1974, where he was negligently exposed to asbestos, including asbestos-containing insulation supplied by Todd Shipyards. Plaintiffs contend that Mr. Wineland's mesothelioma and death were caused by this exposure. Todd Shipyards seeks dismissal of both the negligence and strict liability claims asserted against it because, under either maritime or Washington law, there is no triable issue of fact.

---

[1] For purposes of this Order, the moving defendant will be referred to by its historical name, "Todd Shipyards."

ORDER GRANTING PUGET SOUND
COMMERCE CENTER'S MOTION FOR
SUMMARY JUDGMENT (Dkt. # 302) - 1

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and

---

[2] Todd Shipyard's objects to Exhibits 1-3 of the Affidavit of Marty Kanarek, Dkt. # 320-12. The articles are admissible to show Mr. Kanarek's expertise in the field of epidemiology in the areas of environmental and occupational disease caused by asbestos. Dkt. # 320-12 at 28-57.

Defendant's objections to the timeliness of Mr. Paskal's and Captain Moore's supplemental reports and the admissibility of Dr. Zhang's and Mr. Paskal's reports are overruled without prejudice to further argument regarding these issues. Mr. Paskal and Captain Moore provided reports on or about the due date. *See* Dkt. # 284. Whether the subsequent supplementation was appropriate has not been addressed. Defendant is correct that unsworn expert reports prepared in compliance with Rule 26(a)(2) do not qualify as affidavits or otherwise admissible evidence for purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment. *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1038-39 (N.D. Cal. 2011). However, as the party opposing summary judgment, plaintiffs' evidence is held to a less exacting standard of admissibility than that of the moving party. *Competitive Techs., Inc. v. Fujitsu Ltd.*, 333 F. Supp.2d 858, 863 (N. D. Cal. 2004) (admitting signed but unsworn expert reports that otherwise met the requirements of Federal Rule of Civil Procedure ("Rule") 56(e), as prescribed by Rule 56(c)(4))). The existence of the unsworn report, although not presently in evidentiary form, suffices to alert the opposing party and the Court as to the "availability at the trial of the facts contained in [them]." *Id.* at 864. Where the moving party has not raised a substantive challenge to the authenticity of the reports or the predicted trial testimony of the experts, the Court has discretion to consider the reports. *See Ferreira v. Arpaio*, No. CV-15-01845-PHX-JAT, 2017 WL 6554674, at *4 (D. Ariz. Dec. 22, 2017).

Finally, Todd Shipyards objects to consideration of unauthenticated exhibits submitted with the declaration of plaintiffs' counsel, particularly Mr. Wineland's death certificate and Navy records. Dkt. # 320-2 and # 320-4 through 7. Under Federal Rule of Evidence 901, authentication of an exhibit is a condition precedent to admissibility and is satisfied by "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Ev. 901(a). Unauthenticated documents should not be considered in a motion for summary judgment. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). Nevertheless, authentication may be achieved in more than one way. While a document authenticated through personal knowledge must be attached to an affidavit and the affiant must be a competent "'witness who wrote [the document], signed it, used it, or saw others do so,'" a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-74 n.8 (9th Cir. 2002) (quoting Fed. R. Evid. 901(b)(1)). Under Rule 901(b)(4), documents can be authenticated by the "appearance, content, substance, internal patterns, or other distinctive characteristics of the item, taken together with all of the circumstances." While the mere fact that plaintiffs produced the death certificate and naval records with their initial disclosures does little, in and of itself, to authenticate the documents, in the intervening eighteen months, Todd Shipyards has not identified anything about the documents that raises a question about their authenticity. More importantly, Todd Shipyards does not dispute that Mr. Wineland died in May of 2018, that his death was attributed to mesothelioma, that he worked on the USS TUSCALOOSA when it was overhauled at Todd Shipyards, or that he served as an engineman while aboard the USS TUSCALOOSA. The details regarding Mr. Wineland's assignments

ORDER GRANTING PUGET SOUND
COMMERCE CENTER'S MOTION FOR
SUMMARY JUDGMENT (Dkt. # 302) - 3

having heard the arguments of counsel, the Court finds as follows:

**A. Maritime Law Applies**

At oral argument, plaintiffs conceded that maritime law applies in this case. The Court agrees.

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. [46 U.S.C. § 30101.] The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," [*Sisson v. Ruby*, 497 U.S. 358, 363 (1990)], to determine whether the incident has "a potentially disruptive impact on maritime commerce," [*Id.* at 364, n. 2]. Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." [*Id.* at 365, 364, and n. 2].

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The locality test requires an inquiry into the precise location where the injuries were suffered and/or whether the injuries were caused by a vessel on navigable water. For purposes of plaintiffs' claims against Todd Shipyards, the injury-causing events occurred aboard the USS TUSCALOOSA when it was being repaired at Todd Shipyards in 1974. The vessel spent some time at pierside and some time in drydock during the overhaul. "In assessing whether work was on 'navigable waters' (*i.e.*, was sea-based) it is important to note that work performed aboard a

---

and activities during that time are authenticated by Captain Moore's reliance on records which, to his trained eye, are what they purport to be. These characteristics are sufficient to support a finding the relevant naval records are authentic. *See Las Vegas Sands*, 632 F.3d 526, 533–34.

ORDER GRANTING PUGET SOUND
COMMERCE CENTER'S MOTION FOR
SUMMARY JUDGMENT (Dkt. # 302) - 4

ship that is docked at the shipyard is sea-based work, performed on navigable waters." *Dumas v. ABB Grp., Inc.*, 46 F. Supp.3d 477, 482 (D. Del. 2014). It is also "well-settled that vessels in drydock are still considered to be in 'navigable waters' for purposes of admiralty jurisdiction." *Cabasug v. Crane Co.*, 956 F. Supp.2d 1178, 1187, n. 11 (D. Hawaii 2013). Because asbestos-related disease has a long latency period and often involves years of work on or around ships, intermittent episodes of land-based exposure do not affect the analysis: "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." *Id.* at 1187 (quoting *Conner v. Alfa Laval, Inc.*, 799 F. Supp.2d 455, 466 (E.D. Pa. 2011)).

With regards to the connection test, courts have found that asbestos-related injuries suffered by workers on Navy ships have the potential to disrupt maritime commerce. *Dumas*, 46 F. Supp.3d at 483; *Cabasug*, 956 F. Supp.2d at 1188; *Conner*, 799 F. Supp.2d at 467-68. In making this determination, the Court considers whether the features of the incident, based on a mid-level description of the events, could hypothetically disrupt commercial shipping. *Grubart*, 513 U.S. at 538-39; *Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807, 815 n.31 (9th Cir. 2002). Mr. Wineland worked predominantly on Navy ships on navigable waters, and he was exposed to asbestos in that capacity. The general features of the incident - injury to seaman on navigable waters - has the potential to impact maritime commerce and has a substantial relationship to traditional maritime activity.

Both the location and connection tests are satisfied in this case: maritime law therefore governs the analysis of plaintiffs' negligence and strict liability claims. Nevertheless, "state law may supplement maritime law when maritime law is silent or where a local matter is at issue, but

ORDER GRANTING PUGET SOUND
COMMERCE CENTER'S MOTION FOR
SUMMARY JUDGMENT (Dkt. # 302) - 5

state law may not be applied where it would conflict with [federal] maritime law." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 627 (3d Cir. 1994), *aff'd*, 516 U.S. 199 (1996) (citations omitted). With regards to the issue of causation, the parties' memoranda make clear that Washington and maritime law diverge regarding the showing that must be made in order to satisfy that element of plaintiffs' claims. Maritime law, unaffected by state law, therefore governs that issue.

**B. Negligence - Duty and Breach**

"[T]he elements for a maritime negligence cause of action are defined similarly to the common law: a duty, a breach of the duty, proximate cause, and damages." *White v. Sabatino*, 526 F. Supp.2d 1143, 1156-57 (D. Haw. 2007). *See also Prince v. Thomas*, 25 F.Supp.2d 1045, 1047 (N.D. Cal. 1997). Todd Shipyards argues that plaintiffs' negligence claim fails as a matter of law because there is no evidence from which the jury could conclude (a) that Todd Shipyards failed to exercise reasonable care when overhauling the USS TUSCALOOSA or (b) that any exposure Mr. Wineland may have had while at Todd Shipyards was of an amount and duration sufficient to have been a substantial factor in Mr. Wineland's subsequent illness and death. The causation argument is discussed below in Section C.

Congress enacted the Occupational Safety and Health Act ("OSHA") four years before the work on the USS TUSCALOOSA began at Todd Shipyards. The parties agree that, at all relevant times, Todd Shipyards was aware of the dangers of asbestos aboard ships and had a duty to ensure that its work and the work of its subcontractors were performed safely, not only for the benefit of the shipyard workers, but also for the crew of the USS TUSCALOOSA. The issue is whether plaintiff has raised a triable issue of fact regarding a breach of that duty.

ORDER GRANTING PUGET SOUND
COMMERCE CENTER'S MOTION FOR
SUMMARY JUDGMENT (Dkt. # 302) - 6

By the time the USS TUSCALOOSA came to Todd Shipyards, the Seattle Division had in place mandatory policies designed to protect workers from the hazards of asbestos dust. The policies required posting of warning signs, dust control efforts, the use of personal protective equipment, and personal hygiene. Dkt. # 196-4 at 2-4. Plaintiffs have not identified any area in which these controls fell below the level of care a reasonable person would exercise when removing or installing asbestos-containing products in 1974. Todd Shipyards also required its subcontractors to comply with OSHA's asbestos regulations, making its production manager, a member of management, responsible for insuring that subcontractors acted accordingly. Nevertheless, with regards to the Seattle Division, "there were some concerns about whether that division was complying with the OSHA regulations" in the mid-1970s. Dkt. # 320-8 at 9-10. In May 1973 and again in 1976, OSHA issued citations to Todd Shipyards for subcontractor violations of the asbestos standards. (The details of the incidents are not in the record.) In January 1983, Todd Shipyards received a third citation based on a union representative's complaint that crewmen aboard the SS NEWARK had removed asbestos insulation without proper ventilation, personal protective equipment, or clean up, resulting in a pile of asbestos debris on the floor where workers had to pass. A similar citation based on crewman conduct was received in 1993.

From these facts,[3] plaintiffs argue that Todd Shipyards breached its duty "by allowing Mr. Wineland to be exposed to asbestos dust, which they knew to be harmful." Dkt. # 320 at 15. The

---

[3] Plaintiffs also assert that "Mr. Ay and Mr. Paskal[] opine that it was typical for shipyards in the 1970s to not take proper precautions regarding the hazards of asbestos dust." Dkt. # 320 at 15. No citation to the experts' reports is provided.

ORDER GRANTING PUGET SOUND
COMMERCE CENTER'S MOTION FOR
SUMMARY JUDGMENT (Dkt. # 302) - 7

evidence, even when taken in the light most favorable to plaintiffs, does not support such a conclusion. There is no record evidence regarding the actual conditions at the shipyard or aboard the USS TUSCALOOSA during the months the vessel was at Todd Shipyards in 1974: there are no contemporaneous reports, inspections, or testing, no testimony from shipyard employees or seamen, and no corporate or agency records. What we do know is that Todd Shipyards had in place policies and procedures designed to protect workers and others in the shipyard from asbestos dust and that the reasonableness of those policies has not been challenged. While the implementation was not flawless (and the Court is willing to assume that the citations in the record were not the only instances where employees and crewmen violated the asbestos-handling procedures), the four citations span a period of twenty years and cover the entirety of the shipyard operations. There is no evidence of a violation during the five months when Mr. Wineland was at Todd Shipyards in 1974, much less that any such violation occurred on the USS TUSCALOOSA or in an area where Mr. Wineland might have been exposed. While there is certainly a chance that Todd Shipyards negligently failed to follow its own safety regulations in 1974 and that the failure exposed Mr. Wineland to asbestos dust, to conclude that that, in fact, happened would be pure speculation. It is equally possible that Mr. Wineland's period at Todd Shipyards was a brief respite from the asbestos exposure that otherwise seems to have characterized his naval experience or that any exposure was the result of maintenance or repair work Mr. Wineland or his shipmates performed at the direction of their employer.

      A plaintiff must provide evidence which, while not compelling a finding of liability, does not require speculation or conjecture to establish the elements of the claim. *Gardner v. Seymour*, 27 Wn.2d 802, 809-10 (1947) ("We have frequently said that, if there is nothing more tangible to

ORDER GRANTING PUGET SOUND
COMMERCE CENTER'S MOTION FOR
SUMMARY JUDGMENT (Dkt. # 302) - 8

proceed upon than two or more conjectural theories under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred."). Where the facts in the record "give equal support to each of two inconsistent inferences . . . , neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other, before he is entitled to recover." *Pennsylvania R. Co. v. Chamberlain*, 288 U.S. 333, 339 (1933). The evidence in this case is such that the jury would have to speculate regarding Todd Shipyards' actions over a five month period in 1974 and how those actions impacted Mr. Wineland. Plaintiffs have failed to raise a triable issue of fact regarding their negligence claim.

**C. Causation**

To prevail on both their negligence and strict liability claims, plaintiffs "must demonstrate, among other things, that [Mr. Wineland's] injuries were caused by exposure to asbestos that was attributable to the [shipyard's] conduct." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016). *See also Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005) ("Plaintiffs in products liability cases under maritime law may proceed under both negligence and strict liability theories. Under either theory, a plaintiff must establish causation. *Stark v. Armstrong World Indus., Inc.*, 21 Fed. App'x. 371, 375 (6th Cir. 2001)."), *abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries*, __ U.S. __, 139 S. Ct. 986 (2019). To establish causation under maritime law, plaintiffs must show that Mr. Wineland's exposure to asbestos at Todd Shipyards "was a substantial contributing factor in causing his injuries." *McIndoe*, 817 F.3d at 1174. Evidence of only minimal exposure to asbestos dust

ORDER GRANTING PUGET SOUND
COMMERCE CENTER'S MOTION FOR
SUMMARY JUDGMENT (Dkt. # 302) - 9

attributable to each defendant is insufficient: plaintiffs must provide "evidence regarding the *amount* of exposure to dust" attributable to the shipyard and, "critically, the *duration* of such exposure." *Id.* at 1176-77 (emphasis in original). The evidence must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* at 1176 (quoting *Lindstrom*, 424 F.3d at 492).

As discussed above, plaintiffs have not produced evidence from which a reasonable jury could conclude that Todd Shipyards, its employees, or its subcontractors exposed Mr. Wineland to asbestos dust during the overhaul of the USS TUSCALOOSA in 1974. Absent evidence regarding the nature of the hypothetical release, the type of materials that were mishandled, the duration of the release, and Mr. Wineland's proximity, it is impossible to draw any conclusions regarding the amount or duration of the dust exposure and whether it was a substantial factor in causing Mr. Wineland's injuries. To the extent plaintiffs' strict liability claim is based on the fact that Todd Shipyards installed asbestos-containing insulation (arguably a "product in a defective condition unreasonably dangerous to the user or consumer" for purposes of Restatement (Second) of Torts § 402A), on the USS TUSCALOOSA, plaintiffs do not argue or provide evidence that Mr. Wineland was exposed to asbestos dust emanating from or related to the presence of that insulation. Mr. Wineland left the service of the USS TUSCALOOSA approximately five days after the overhaul was complete and the vessel left the shipyard. There is no indication that any of the insulation installed by Todd Shipyards was cut, repaired, or otherwise handled in or around Mr. Wineland during that time period. Plaintiffs cannot succeed on their strict liability claim.

1   For all of the foregoing reasons, Todd Shipyards' motion for summary judgment (Dkt.
2   # 302) is GRANTED.

Dated this 4th day of March, 2021.

*MrS Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING PUGET SOUND
COMMERCE CENTER'S MOTION FOR
SUMMARY JUDGMENT (Dkt. # 302) - 11