# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

CHARLOTTE WINELAND, Individually, and SUSAN WINELAND, as Personal Representative of the Estate of JOHN DALE WINELAND, deceased,

Plaintiffs,

v.

AIR & LIQUID SYSTEMS CORPORATION, *et al.*,

Defendants.

Cause No. C19-0793RSL

ORDER GRANTING CRANE CO.'S MOTION FOR SUMMARY JUDGMENT (DKT. # 304)

This matter comes before the Court on "Defendant Crane Co.'s Motion for Summary Judgment." Dkt. # 304. Plaintiffs' decedent, John Dale Wineland, worked aboard a series of Navy ships and in Navy offices between 1963 and 1984. Plaintiffs allege that Mr. Wineland was exposed to asbestos contained in Crane Co. products while aboard the USS DYNAMIC, the USS LOYALTY, the USS TUSCALOOSA, and/or the USS ESTEEM. Although his job titles changed through the years, Mr. Wineland worked primarily in the engine rooms of the ships to which he was assigned, repairing and maintaining machinery and equipment such as diesel engines, pumps, air compressors, and valves. Mr. Wineland developed mesothelioma, an asbestos-related disease, and died in 2018. Plaintiffs assert that Crane Co. is liable for Mr. Wineland's illness and death under theories of negligence and strict liability. Crane Co. seeks

ORDER GRANTING CRANE CO.'S
MOTION FOR SUMMARY JUDGMENT - 1

summary dismissal of all of plaintiffs' claims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[1] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

Crane Co. argues that, under either Washington or maritime law, (a) plaintiffs have failed to produce admissible evidence from which a jury could reasonably conclude that Mr. Wineland's exposure to asbestos from Crane Co. products was a substantial contributing factor in his illness and death and (b) Crane Co. had no legal duty to ensure that products and replacement parts manufactured by others were reasonably safe and/or properly labeled. In light of plaintiffs' earlier concession that maritime law governed their claims against Todd Shipyards, the Court ordered the parties to show cause why the same law should not apply to the claims asserted against Crane Co. (and the remaining defendants). In response, plaintiffs argue that, even if maritime law applies, there is no conflict between the substantive principles of causation in federal admiralty law and Washington law and state law principles supplement maritime law in those circumstances. Dkt. # 541 at 2.

**A. Causation**

To prevail on their negligence and strict liability claims, plaintiffs "must demonstrate, among other things, that [Mr. Wineland's] injuries were caused by exposure to asbestos that was attributable to [Crane Co.'s] conduct." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016). *See also Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries*, __ U.S. __, 139 S. Ct. 986 (2019). To establish causation under maritime law, plaintiffs must show that Mr. Wineland's

---

[1] This matter can be decided on the papers submitted in connection with this motion and the supplemental briefing regarding the applicability of maritime law. The parties' requests for oral argument are DENIED.

ORDER GRANTING CRANE CO.'S
MOTION FOR SUMMARY JUDGMENT - 3

exposure to asbestos from Crane Co. products "was a substantial contributing factor in causing his injuries." *McIndoe*, 817 F.3d at 1174. Evidence of only minimal exposure to asbestos dust attributable to each defendant is insufficient: plaintiffs must provide "evidence regarding the *amount* of exposure to dust" attributable to Crane Co. and, "critically, the *duration* of such exposure." *Id.* at 1176-77 (emphasis in original). The evidence must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* at 1176 (quoting *Lindstrom*, 424 F.3d at 492). "[M]ore is needed" than simply placing a defendant's products in the workplace and showing that the decedent was occasionally exposed to asbestos dust from those products. *Id*. at 1176-77.

Although some Washington cases use the phrase "substantial factor" to describe plaintiff's burden when establishing a causal connection under state law, the phrase does not have the same meaning as under maritime law. In *Lockwood v. AC & S, Inc.*, 109 Wn.2d 235, 245 n.6 (1987), the Washington Supreme Court reviewed a jury verdict based on the following theory of causation: "[i]f you find two or more causes combine to produce a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about harm, each is charged with responsibility for the harm." The court found that the "substantial factor" requirement could be satisfied by "evidence that exposure to asbestos causes asbestosis; that once asbestos dust is released, it can remain in the air and drift with air currents for a long period of time; and that [defendant's] product was located at shipyards where [plaintiff] was employed during the period when he worked there." *Id.* at 243.[2] Recognizing that

---

[2] At a later point in the decision, the state Supreme Court reiterates that this evidence "creates a reasonable inference that plaintiff was exposed to [defendant's] products. When this is combined with the expert testimony that all exposure to asbestos has a cumulative effect in contributing to the

ORDER GRANTING CRANE CO.'S
MOTION FOR SUMMARY JUDGMENT - 4

"it is extremely difficult to determine if exposure to a particular defendant's asbestos product actually caused plaintiff's injury" in light of the "peculiar nature of asbestos products and the development of disease due to exposure to such products," the state Supreme Court directed courts to consider a number of factors when determining whether there is sufficient evidence to survive summary judgment on the issue of causation. The relevant evidence includes:

- evidence of the decedent's proximity to defendant's products when the exposure occurred;
- the expanse of the work site where the asbestos fibers were released;
- the length of time of exposure to asbestos dust from defendant's products;
- the types of asbestos products to which the decedent was exposed and how they were handled in order to evaluate the relative risks posed by defendant's products;
- medical causation evidence regarding how asbestos inhalation causes injury and plaintiff's particular disease; and
- evidence as to other possible causes of the decedent's particular disease process.

*Id.* at 248-49. In *Lockwood* itself, there was no direct evidence of contact with defendant's products. Rather, a triable issue of fact regarding causation was raised by evidence that defendant's product "was used in the Puget Sound area during the period when [plaintiff] was employed in the shipyards" (*Id.* at 239) and that plaintiff had significant exposure to asbestos dust at his various workplaces (*Id.* at 238).[3]

---

contraction of asbestosis," a reasonable jury could conclude that the exposure to defendant's product was a proximate cause of plaintiff's injury. *Id.* at 247-48.

[3] "When moving heavy equipment, [Lockwood] used a fall chain [which would] rub against and cut into asbestos insulation which covered pipes overhead, creating asbestos dust which would fall on the riggers." *Id.* at 238. He would also sometimes work in areas where old asbestos insulation had recently been removed and new insulation installed. *Id.* During Lockwood's 20 years at Lake Union Drydock, asbestos was stored in a compartment next to the lunch room, and "[a]sbestos dust from the

ORDER GRANTING CRANE CO.'S
MOTION FOR SUMMARY JUDGMENT - 5

It is possible, then, that the "substantial factor" test under state law can be satisfied by evidence that defendant's products were installed somewhere aboard the ships on which Mr. Wineland served and that Mr. Wineland was constantly exposed to asbestos dust in the workplace. In *McIndoe*, however, the Ninth Circuit clearly states that evidence placing a defendant's products somewhere in the workplace with a possibility of occasional exposure to asbestos dust from those products is insufficient to raise a triable issue of fact. 817 F.3d at 1176-77. Thus, there is, a conflict between the substantive principles of causation under maritime law and those applicable under Washington law. Given that there is an actual conflict, a choice of law must be made. The Court finds that both the location and connection tests are satisfied, and maritime law governs this case.[4] The conflicting state law causation analysis cannot be used to "supplement" maritime law where maritime law addresses the dispositive issues.

While there is evidence that various Crane Co. products were installed on the DYNAMIC, LOYALTY, ESTEEM, and TUSCALOOSA (*see infra* at 9) and that Mr. Wineland was exposed to significant levels of asbestos dust while working in the engine rooms of those

---

compartment entered the eating area and was present while he ate." *Id*.

[4] "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. [46 U.S.C. § 30101.] The connection test raises two issues. A court, first, must 'assess the general features of the type of incident involved,' [*Sisson v. Ruby*, 497 U.S. 358, 363 (1990)], to determine whether the incident has 'a potentially disruptive impact on maritime commerce,' [*Id.* at 364, n. 2]. Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.' [*Id.* at 365, 364, and n. 2]." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995).

ORDER GRANTING CRANE CO.'S
MOTION FOR SUMMARY JUDGMENT - 6

vessels,[5] plaintiffs have not produced evidence from which a reasonable jury could conclude that he suffered a substantial exposure to asbestos dust from Crane Co. products. Absent evidence regarding (a) where the Crane Co. globe, check, and swing valves were installed on the DYNAMIC, LOYALTY, and ESTEEM and whether any of the original asbestos-containing seals remained in place during Mr. Wineland's years of service, (b) where the Crane Co. sewage transfer pumps were installed on the TUSCALOOSA and whether the asbestos-containing seals remained in place during Mr. Wineland's years of service, (c) whether the Crane Co. auxiliary lube oil pumps and the 1" diameter bronze valves that were installed on the TUSCALOOSA contained asbestos and were in or near Mr. Wineland's work station, and (d) whether any of the replacement valve gaskets and packing the Navy purchased from Crane Co. while Mr. Wineland was in the Navy were installed on any of the ships on which he served, it is impossible to draw any conclusions regarding whether Mr. Wineland was exposed to asbestos from Crane Co. products, much less the amount or duration of the such exposure.

---

[5] Based on his extensive experience in the Navy and at naval shipyards, including the supervision of enginemen during the relevant time frame aboard the USS BRUMBY and the USS NEWPORT NEWS, Captain Arnold Moore opines that Mr. Wineland repaired, assisted with the repair, observed the repair or cleaned up after the repair of the major machinery and many of the valves in the engine rooms of the DYNAMIC, LOYALTY, ESTEEM, and TUSCALOOSA. Dkt. # 355-3 at 8. Captain Moore describes how these repairs would be carried out, including activities which would invariably create asbestos dust, including the removal of old, dried packing and gaskets and the cutting and installation of new packing and gasket materials Dkt. # 355-3 at 9. Plaintiffs' industrial hygienist, Steven Paskal, similarly opines that "it is virtually certain that [Mr. Wineland], and/or others in close proximity and/or in shared, enclosed airspaces, would have routinely removed and replaced gaskets and stem/shaft packing associated with . . . valves." Dkt. # 355-12 at 5. These activities would have exposed Mr. Wineland to an asbestos-containing aerosol that would remain suspended in air streams for extended periods of time at concentrations that ranged from hundreds to millions of times ambient pollution levels. Dkt. # 355-12 at 2-3 and 6. Gregory Bullinger, a shipmate of Mr. Wineland on the TUSCALOOSA, confirms that "work on the equipment in the engine room was regular, ongoing, and routine. We all removed and replaced packing and gaskets on the various equipment, including the valves, pumps, and ALCO diesel engines." Dkt. # 335-17 at 3.

ORDER GRANTING CRANE CO.'S
MOTION FOR SUMMARY JUDGMENT - 7

Plaintiffs have failed to raise a triable issue of fact regarding causation under maritime law.

**B. Duty**

The parties generally agree that an original equipment manufacturer faces liability for component parts it installs in and supplies with its products, as well as for replacement parts it manufactures and supplies. They also agree that, under maritime (or Washington) law, a manufacturer generally does not owe a duty with regards to replacement parts or ancillary products (such as insulation) manufactured and sold by third-parties unless the manufacturer in some way invites or requires the integration of the third-party product. *See DeVries*, 139 S. Ct. at 995 (holding that, under maritime law, original equipment manufacturers have a duty to warn "only when their product *requires* a part in order for the integrated product to function as intended") (emphasis in original); *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 414-15 (2012) (distinguishing cases in which no duty to warn was found on the ground that the manufacturers' products in those cases did not require that asbestos be used in conjunction with the products, were not specifically designed to be used with asbestos, and would not, by their very nature, necessarily involve exposure to asbestos); *Woo v. Gen. Elec. Co.*, 198 Wn. App. 496, 508 (2017) (finding a triable issue regarding duty where the product required insulation, gaskets, and packing to function as designed, the manufacturer knew that only asbestos-containing insulation, gaskets, and packing were available, and the manufacturer provided precut asbestos containing gaskets with the product and generally purchased and field-installed insulation to factory specifications).

Plaintiffs argue that Crane Co. should face liability for its failure to warn of the hazards

of asbestos-containing replacement parts supplied by third-parties because Crane Co. was aware that the asbestos components in its products would wear out and that asbestos-containing replacements were necessary for the equipment to function as designed. Dkt. # 355 at 16. Evidentiary support for this argument is lacking. The relevant naval records, as interpreted and summarized by Captain Arnold Moore, show that:

- Crane supplied globe, check, and swing valves that were installed on the DYNAMIC, LOYALTY, and ESTEEM in or before 1953. Manufacturer drawings of the globe valves depict seals made of compressed asbestos sheet gaskets and braided asbestos packing. Dkt. # 355-3 at 17.

- Sewage transfer pumps manufactured by "Crane Pumps and Systems" were installed on the USS TUSCALOOSA and, per Navy specifications for water pumps, likely had seals made of compressed asbestos sheet gaskets. Dkt. # 355-3 at 19.

- "Crane Company in Salem, Ohio" manufactured a "small 13 gallon per minute auxiliary lube oil pump which was installed on the TUSCALOOSA." Dkt. # 355-3 at 19.

- "Crane small (1 inch diameter or less) bronze valves" were also installed on the USS TUSCALOOSA. Dkt. # 355-3 at 20.

- The Navy ordered replacement valve gaskets, braided asbestos packing, and precut asbestos packing from Crane during the time Mr. Wineland served in the Navy. Dkt. # 355-3 at 22-24.

To the extent these facts relate to products manufactured and/or supplied by Crane Co.,[6] its duty to warn is not contested. None of these facts relates to third-party replacement parts, suggests that any particular Crane Co.'s product was designed to work only with asbestos-containing products, or raises an inference that Crane Co. required the use of asbestos-containing replacement parts. Crane Co.'s corporate representative, Anthony Pantaleoni, testified that, while

---

[6] The Court assumes for purpose of this motion that the variously-named suppliers are all the defendant, Crane Co.

ORDER GRANTING CRANE CO.'S
MOTION FOR SUMMARY JUDGMENT - 9

some of the valves sold by Crane Co. contained and specified asbestos-containing gaskets and packing, others did not. Dkt. # 355-14 at 6 and Dkt. # 355-15 at 3-4. *See also Braaten v. Saberhagen Holdings*, 165 Wn.2d 373, 395 (2008) ("With respect to Crane Company, the plaintiff points out that a Crane Company catalog advertised asbestos packing for use with Crane valves as well as other asbestos products, including asbestos insulation. As Crane responds, however, the catalog also lists nonasbestos-containing packing and gasket material."). Dr. Pantaleoni further asserted that it was the customer who made the choice whether to replace original component parts with asbestos or non-asbestos replacements. Dkt. # 355-16 at 5. Plaintiffs have failed to provide evidence from which a reasonable jury could conclude that Crane Co. is liable for any asbestos-containing replacement part that was manufactured by a third party and integrated into a Crane Co. product installed on the USS DYNAMIC, the USS LOYALTY, the USS TUSCALOOSA, or the USS ESTEEM.

For all of the foregoing reasons, Crane Co.'s motion for summary judgment (Dkt. # 304) is GRANTED. Plaintiffs' motion for summary judgment on Crane Co.'s affirmative defenses (Dkt. # 362) is DENIED as moot.

Dated this 17th day of May, 2021.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER GRANTING CRANE CO.'S
MOTION FOR SUMMARY JUDGMENT - 10