UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLOTTE WINELAND, Individually, and SUSAN WINELAND, as Personal Representative of the Estate of JOHN DALE WINELAND, deceased,

Plaintiffs,

v.

AIR & LIQUID SYSTEMS CORPORATION, *et al.*,

Defendants.

Cause No. C19-0793RSL

ORDER GRANTING ANCHOR/DARLING VALVE CO.'S MOTION FOR SUMMARY JUDGMENT (DKT. # 309)

This matter comes before the Court on defendant "Anchor/Darling Valve Co.'s Amended Motion for Summary Judgment." Dkt. # 309. Plaintiffs' decedent, John Dale Wineland, worked aboard a series of Navy ships and in Navy offices between 1963 and 1984. Plaintiffs allege that Mr. Wineland was exposed to asbestos contained in Anchor/Darling products while aboard the USS TUSCALOOSA between 1972 and 1974. Mr. Wineland worked primarily in the engine rooms of the ships to which he was assigned, repairing and maintaining machinery and equipment such as diesel engines, pumps, air compressors, and valves. Mr. Wineland developed mesothelioma, an asbestos-related disease, and died in 2018. Plaintiffs assert that Anchor/Darling is liable for Mr. Wineland's illness and death under theories of negligence and strict liability.

ORDER GRANTING ANCHOR/DARLING'S
MOTION FOR SUMMARY JUDGMENT - 1

Anchor/Darling seeks summary dismissal of all of plaintiffs' claims, arguing that, under either Washington or maritime law, (a) plaintiffs have failed to produce admissible evidence from which a jury could reasonably conclude that Mr. Wineland's exposure to asbestos from Anchor/Darling products was a substantial contributing factor in his illness and death and (b) it had no legal duty to ensure that products and replacement parts manufactured by others were reasonably safe and/or properly labeled. Having reviewed the memoranda, declarations, and exhibits submitted by the parties[1] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

**A. Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact

---

[1] This matter can be decided on the papers submitted in connection with this motion and the supplemental briefing regarding the applicability of maritime law. The parties' requests for oral argument are DENIED.

genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

**B. Causation**

For the reasons set forth in the Order Granting Crane Co.'s Motion for Summary Judgment, the Court finds that maritime law applies to plaintiffs' tort claims. To prevail on their negligence and strict liability claims, plaintiffs "must demonstrate, among other things, that [Mr. Wineland's] injuries were caused by exposure to asbestos that was attributable to [Anchor/Darling's] conduct." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016). *See also Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries*, __ U.S. __, 139 S. Ct. 986 (2019). To establish causation under maritime law, plaintiffs must show that Mr. Wineland's exposure to asbestos from Anchor/Darling products "was a substantial contributing factor in causing his injuries." *McIndoe*, 817 F.3d at 1174. Evidence of only minimal exposure to asbestos dust attributable to each defendant is insufficient: plaintiffs must provide "evidence regarding the *amount* of exposure to dust" attributable to Anchor/Darling and, "critically, the *duration* of such

exposure." *Id.* at 1176-77 (emphasis in original). The evidence must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* at 1176 (quoting *Lindstrom*, 424 F.3d at 492). "[M]ore is needed" than simply placing a defendant's products in the workplace and showing that the decedent was occasionally exposed to asbestos dust from those products. *Id*. at 1176-77.

While there is evidence that Anchor/Darling check valves and manifolds were installed on the TUSCALOOSA (Dkt. # 398-3 at 20; Dkt. # 398-8 at 18-19) and that Mr. Wineland was exposed to significant levels of asbestos dust while working in the engine room of that vessel,[2] plaintiffs have not produced evidence from which a reasonable jury could conclude that he suffered a substantial exposure to asbestos dust from Anchor/Darling products. Absent evidence regarding where the Anchor/Darling check valves and manifolds were installed on the TUSCALOOSA and whether any of the asbestos-containing seals on the valves during Mr. Wineland's service on the vessel were manufactured or supplied by Anchor/Darling, it is

---

[2] Based on his extensive experience in the Navy and at naval shipyards, including the supervision of enginemen during the relevant time frame aboard the USS BRUMBY and the USS NEWPORT NEWS, Captain Arnold Moore opines that Mr. Wineland repaired, assisted with the repair, observed the repair or cleaned up after the repair of the major machinery and many of the valves in the engine rooms of the DYNAMIC, LOYALTY, ESTEEM, and TUSCALOOSA. Dkt. # 355-3 at 8. Captain Moore describes how these repairs would be carried out, including activities which would invariably create asbestos dust, including the removal of old, dried packing and gaskets and the cutting and installation of new packing and gasket materials Dkt. # 355-3 at 9. Plaintiffs' industrial hygienist, Steven Paskal, similarly opines that "it is virtually certain that [Mr. Wineland], and/or others in close proximity and/or in shared, enclosed airspaces, would have routinely removed and replaced gaskets and stem/shaft packing associated with . . . valves." Dkt. # 355-12 at 5. These activities would have exposed Mr. Wineland to an asbestos-containing aerosol that would remain suspended in air streams for extended periods of time at concentrations that ranged from hundreds to millions of times ambient pollution levels. Dkt. # 355-12 at 2-3 and 6. Gregory Bullinger, a shipmate of Mr. Wineland on the TUSCALOOSA, confirms that "work on the equipment in the engine room was regular, ongoing, and routine. We all removed and replaced packing and gaskets on the various equipment, including the valves, pumps, and ALCO diesel engines." Dkt. # 335-17 at 3.

ORDER GRANTING ANCHOR/DARLING'S
MOTION FOR SUMMARY JUDGMENT - 4

impossible to draw any conclusions regarding whether Mr. Wineland was exposed to asbestos from Anchor/Darling products, much less the amount or duration of the such exposure.

Plaintiffs have failed to raise a triable issue of fact regarding causation under maritime law.

**C. Duty**

The parties generally agree that an original equipment manufacturer faces liability for component parts it installs in and supplies with its products, as well as for replacement parts it manufactures and supplies. They also agree that, under maritime (or Washington) law, a manufacturer generally does not owe a duty with regards to replacement parts or ancillary products (such as insulation) manufactured and sold by third-parties unless the manufacturer in some way invites or requires the integration of the third-party product. *See DeVries*, 139 S. Ct. at 995 (holding that, under maritime law, original equipment manufacturers have a duty to warn "only when their product *requires* a part in order for the integrated product to function as intended") (emphasis in original); *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 414-15 (2012) (distinguishing cases in which no duty to warn was found on the ground that the manufacturers' products in those cases did not require that asbestos be used in conjunction with the products, were not specifically designed to be used with asbestos, and would not, by their very nature, necessarily involve exposure to asbestos); *Woo v. Gen. Elec. Co.*, 198 Wn. App. 496, 508 (2017) (finding a triable issue regarding duty where the product required insulation, gaskets, and packing to function as designed, the manufacturer knew that only asbestos-containing insulation, gaskets, and packing were available, and the manufacturer provided precut asbestos containing gaskets with the product and generally purchased and field-installed

ORDER GRANTING ANCHOR/DARLING'S
MOTION FOR SUMMARY JUDGMENT - 5

insulation to factory specifications).

Plaintiffs argue that Anchor/Darling should face liability for its failure to warn of the hazards of asbestos-containing replacement parts supplied by third-parties because Anchor/Darling was aware that the asbestos components in its products would wear out and that asbestos-containing replacements were necessary for the equipment to function as designed. Dkt. # 398 at 17. Evidentiary support for this argument is lacking. The relevant naval records, as interpreted and summarized by Captain Arnold Moore, show only that "Anchor/Darling check valves and manifolds" were "installed on the TUSCALOOSA." Dkt. # 398-3 at 20. To the extent these facts relate to products manufactured and/or supplied by Anchor/Darling, its duty to warn is not contested. None of these facts relates to third-party replacement parts, suggests that any particular Anchor/Darling's product was designed to work only with asbestos-containing products, or raises an inference that Anchor/Darling required the use of asbestos-containing replacement parts, however. The problem is not with plaintiffs' theory of liability, but with their proof. *See, e.g., Devries*, 139 S. Ct. at 995-96 ("Courts have determined that [a duty to warn of the dangers of third-party products arises] in certain related situations, including when: (i) a manufacturer directs that the part be incorporated; (ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part; or (iii) a product would be useless without the part. In all of those situations, courts have said that the product in effect requires the part in order for the integrated product to function as intended. We agree.") (internal citations omitted).

Plaintiffs have failed to provide evidence from which a reasonable jury could conclude that Anchor/Darling is liable for any asbestos-containing replacement part or ancillary product

ORDER GRANTING ANCHOR/DARLING'S
MOTION FOR SUMMARY JUDGMENT - 6

that was manufactured by a third party and integrated into a Anchor/Darling product installed on the USS TUSCALOOSA.

For all of the foregoing reasons, Anchor/Darling's motion for summary judgment (Dkt. # 309) is GRANTED.

Dated this 17th day of May, 2021.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge