UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLOTTE WINELAND, Individually, and SUSAN WINELAND, as Personal Representative of the Estate of JOHN DALE WINELAND, deceased,

Plaintiffs,

v.

AIR & LIQUID SYSTEMS CORPORATION, *et al.*,

Defendants.

Cause No. C19-0793RSL

ORDER GRANTING ROBERTSHAW CONTROL'S MOTION FOR SUMMARY JUDGMENT (DKT. # 311)

This matter comes before the Court on the "Amended Motion for Summary Judgment of Defendant Robertshaw Controls Company." Dkt. # 311. Plaintiffs' decedent, John Dale Wineland, worked aboard a series of Navy ships and in Navy offices between 1963 and 1984. Plaintiffs allege that Mr. Wineland was exposed to asbestos contained in Robertshaw Controls products while aboard the USS ESTEEM, the USS PLEDGE, and the USS TUSCALOOSA.[1] Although his job titles changed through the years, Mr. Wineland worked primarily in the engine rooms of the ships to which he was assigned, repairing and maintaining machinery and equipment such as diesel engines, pumps, air compressors, and valves. Mr. Wineland developed

---

[1] Products for which Robertshaw Controls is responsible include those sold under the name Fulton Sylphon.

ORDER GRANTING ROBERTSHAW CONTROL'S
MOTION FOR SUMMARY JUDGMENT - 1

mesothelioma, an asbestos-related disease, and died in 2018. Plaintiffs assert that Robertshaw Controls is liable for Mr. Wineland's illness and death under theories of negligence and strict liability. Robertshaw Controls seeks summary dismissal of all of plaintiffs' claims. Robertshaw Controls argues that, under Washington law,[2] plaintiffs have failed to produce admissible evidence from which a jury could reasonably conclude that Mr. Wineland was exposed to asbestos from Robertshaw Controls products or that the non-existent exposure was a substantial contributing factor in his illness and death.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[3] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

**A. Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . .

---

[2] Robertshaw Controls did not assert that maritime law applies in its motion. Its alternative choice of law argument, raised for the first time in reply, has not been considered.

[3] This matter can be decided on the papers submitted. The parties' requests for oral argument are DENIED.

ORDER GRANTING ROBERTSHAW CONTROL'S
MOTION FOR SUMMARY JUDGMENT - 2

and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

**B. Causation**

To prevail on their negligence and strict liability claims, plaintiffs "must demonstrate, among other things, that [Mr. Wineland's] injuries were caused by exposure to asbestos that was attributable to [Robertshaw Controls's] conduct." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016). *See also Lockwood v. AC & C, Inc.*, 109 Wn.2d 235, 245 (1987) ("Generally, under traditional product liability theory, the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product."). In *Lockwood*, the Washington Supreme Court reviewed a jury verdict based on the following theory of causation: "[i]f you find two or more causes combine to produce a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about harm, each is charged with responsibility for the harm." The court found that the

ORDER GRANTING ROBERTSHAW CONTROL'S
MOTION FOR SUMMARY JUDGMENT - 3

"substantial factor" requirement could be satisfied by "evidence that exposure to asbestos causes asbestosis; that once asbestos dust is released, it can remain in the air and drift with air currents for a long period of time; and that [defendant's] product was located at shipyards where [plaintiff] was employed during the period when he worked there." *Id.* at 243.[4] Recognizing that "it is extremely difficult to determine if exposure to a particular defendant's asbestos product actually caused plaintiff's injury" in light of the "peculiar nature of asbestos products and the development of disease due to exposure to such products," the state Supreme Court directed courts to consider a number of factors when determining whether there is sufficient evidence to survive summary judgment on the issue of causation. The relevant evidence includes:

- evidence of the decedent's proximity to defendant's products when the exposure occurred;

- the expanse of the work site where the asbestos fibers were released;

- the length of time of exposure to asbestos dust from defendant's products;

- the types of asbestos products to which the decedent was exposed and how they were handled in order to evaluate the relative risks posed by defendant's products;

- medical causation evidence regarding how asbestos inhalation causes injury and plaintiff's particular disease; and

- evidence as to other possible causes of the decedent's particular disease process.

*Id.* at 248-49. In *Lockwood* itself, there was no direct evidence of contact with defendant's products. Rather, a triable issue of fact regarding causation was raised by evidence that

---

[4] At a later point in the decision, the state Supreme Court reiterates that this evidence "creates a reasonable inference that plaintiff was exposed to [defendant's] products. When this is combined with expert testimony that all exposure to asbestos has a cumulative effect in contributing to the contraction of asbestosis," a reasonable jury could conclude that the exposure to defendant's product was a proximate cause of plaintiff's injury. *Id.* at 247-48.

ORDER GRANTING ROBERTSHAW CONTROL'S
MOTION FOR SUMMARY JUDGMENT - 4

defendant's asbestos-containing product was used on a large liner conversion on which plaintiff worked (*Id.* at 247) and that plaintiff had significant exposure to asbestos dust at his various workplaces (*Id.* at 238).[5]

There is evidence that Fulton Sylphon temperature regulating valves were installed on the ESTEEM during or before 1955 (Dkt. # 396-8 at 47-48), that Fulton Sylphon 1.5" temperature regulators and temperature regulating valves were installed on the PLEDGE during or before 1955 (Dkt. # 396-6 at 38 and 62), and that Robertshaw Controls 5" diameter bronze temperature regulating valves were installed on the TUSCALOOSA (Dkt. # 396-2 at 20). There is also evidence that the Fulton Sylphon valves the Navy tested and approved for use on its vessels contained asbestos gaskets and packing (Dkt. # 396-14 at 2-3) and that the way these products were repaired would invariably create asbestos dust (Dkt. # 396-2 at 9). There is ample evidence to support a finding that Mr. Wineland was exposed to significant levels of asbestos dust while working in the engine rooms of the ESTEEM, the PLEDGE, and the TUSCALOOSA.[6]

---

[5] "When moving heavy equipment, [Lockwood] used a fall chain [which would] rub against and cut into asbestos insulation which covered pipes overhead, creating asbestos dust which would fall on the riggers." *Id.* at 238. He would also sometimes work in areas where old asbestos insulation had recently been removed and new insulation installed. *Id.* During Lockwood's 20 years at Lake Union Drydock, asbestos was stored in a compartment next to the lunch room, and "[a]sbestos dust from the compartment entered the eating area and was present while he ate." *Id.*

[6] Based on his extensive experience in the Navy and at naval shipyards, including the supervision of enginemen during the relevant time frame aboard the USS BRUMBY and the USS NEWPORT NEWS, Captain Arnold Moore opines that Mr. Wineland repaired, assisted with the repair, observed the repair or cleaned up after the repair of the major machinery and many of the valves in the engine rooms of the ESTEEM, the PLEDGE, and the TUSCALOOSA. Dkt. # 396-2 at 8. Captain Moore describes how these repairs would be carried out, including activities which would invariably create asbestos dust, including the removal of old, dried packing and gaskets and the cutting and installation of new packing and gasket materials Dkt. # 396-2 at 9. Plaintiffs' industrial hygienist, Steven Paskal, similarly opines that "it is virtually certain that [Mr. Wineland], and/or others in close proximity and/or in shared, enclosed airspaces, would have routinely removed and replaced gaskets and

ORDER GRANTING ROBERTSHAW CONTROL'S
MOTION FOR SUMMARY JUDGMENT - 5

The problem is that the jury would have to speculate to conclude that the asbestos to which Mr. Wineland was exposed came from a Robertshaw Controls product. Plaintiffs have not provided any evidence suggesting that the Robertshaw Controls products were installed in the engine rooms where Mr. Wineland worked. Where there is evidence of the products' location, it was not in Mr. Wineland's alleged work spaces. *See* Dkt. # 396-8 at 47-48. Nor have plaintiffs provided evidence that Mr. Wineland worked on valves outside the engine rooms, that he was nearby when others performed such work, that he was exposed to asbestos dust outside the engine rooms, or that the configuration of the ESTEEM, the PLEDGE, and/or the TUSCALOOSA would give rise to a reasonable inference that work performed on Robertshaw Controls valves would contribute to the aerosol to which he was exposed. Absent evidence from which one could reasonably infer that Mr. Wineland was exposed to asbestos from this defendant's products, there can be no basis for a finding of a causal connection between Robertshaw Controls products and his injuries even under Washington law. *See Lockwood*, 109 Wn.2d at 247-28 (finding that, where evidence creates a reasonable inference that plaintiff was exposed to defendant's products, the addition of "expert testimony that all exposure to asbestos has a cumulative effect in contributing to the contraction of" asbestos-related disease creates a triable issue of fact).

---

stem/shaft packing associated with . . . valves." Dkt. # 396-11 at 5. These activities would have exposed Mr. Wineland to an asbestos-containing aerosol that would remain suspended in air streams for extended periods of time at concentrations that ranged from hundreds to millions of times ambient pollution levels. Dkt. # 396-11 at 2-3 and 6. Gregory Bullinger, a shipmate of Mr. Wineland on the TUSCALOOSA, confirms that "work on the equipment in the engine room was regular, ongoing, and routine. We all removed and replaced packing and gaskets on the various equipment, including the valves, pumps, and ALCO diesel engines." Dkt. # 396-9 at 3.

ORDER GRANTING ROBERTSHAW CONTROL'S
MOTION FOR SUMMARY JUDGMENT - 6

For all of the foregoing reasons, Robertshaw Controls's motion for summary judgment (Dkt. # 311) is GRANTED. Plaintiffs' motion for summary judgment on Robertshaw Controls' affirmative defenses (Dkt. # 370) is DENIED as moot.

Dated this 17th day of May, 2021.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING ROBERTSHAW CONTROL'S
MOTION FOR SUMMARY JUDGMENT - 7