UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLOTTE WINELAND, Individually, and SUSAN WINELAND, as Personal Representative of the Estate of JOHN DALE WINELAND, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, *et al.*,<br><br>Defendants. | Cause No. C19-0793RSL<br><br>ORDER GRANTING ALFA LAVAL INC'S MOTION FOR SUMMARY JUDGMENT (DKT. # 313) |

This matter comes before the Court on "Defendant Alfa Laval Inc.'s Amended Motion for Summary Judgment." Dkt. # 313. Plaintiffs' decedent, John Dale Wineland, worked aboard a series of Navy ships and in Navy offices between 1963 and 1984. Plaintiffs allege that Mr. Wineland was exposed to asbestos contained in Alfa Laval products[1] while aboard the USS DYNAMIC (1963-1966), the USS PLEDGE (1966-1967), the USS LOYALTY (1970-1972), the USS TUSCALOOSA (1972-1974), and the USS ESTEEM (1978-1980). Mr. Wineland worked primarily in the engine rooms of the ships to which he was assigned, repairing and maintaining machinery and equipment such as diesel engines, pumps, air compressors, and valves. Mr. Wineland developed mesothelioma, an asbestos-related disease, and died in 2018.

---

[1] Alfa Laval is answering in this case for products sold under the names Sharples and DeLaval.

ORDER GRANTING ALFA LAVAL'S
MOTION FOR SUMMARY JUDGMENT - 1

Plaintiffs assert that Alfa Laval is liable for Mr. Wineland's illness and death under theories of negligence and strict liability.

Alfa Laval seeks summary dismissal of all of plaintiffs' claims, arguing that, under either Washington or maritime law, plaintiffs have failed to produce admissible evidence from which a jury could reasonably conclude that (a) Mr. Wineland's exposure to asbestos from Alfa Laval products, if any, was a substantial contributing factor in his illness and death and (b) even if such exposure were shown, plaintiffs cannot demonstrate that the asbestos was original to the equipment or otherwise manufactured, supplied, or specified by Alfa Laval. Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

**A. Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . .

---

[2] This matter can be decided on the papers submitted in connection with this motion and the supplemental briefing regarding the applicability of maritime law. The parties' requests for oral argument are DENIED.

ORDER GRANTING ALFA LAVAL'S
MOTION FOR SUMMARY JUDGMENT - 2

and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

**B. Causation**

For the reasons set forth in the Order Granting Crane Co.'s Motion for Summary Judgment (Dkt. # 550), the Court finds that maritime law applies to plaintiffs' tort claims. To prevail on their negligence and strict liability claims, plaintiffs "must demonstrate, among other things, that [Mr. Wineland's] injuries were caused by exposure to asbestos that was attributable to [Alfa Laval's] conduct." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016). *See also Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries*, __ U.S. __, 139 S. Ct. 986 (2019). To establish causation under maritime law, plaintiffs must show that Mr. Wineland's exposure to asbestos from Alfa Laval products "was a substantial contributing factor in causing his injuries." *McIndoe*, 817 F.3d at 1174. Evidence of only minimal exposure to asbestos dust attributable to

each defendant is insufficient: plaintiffs must provide "evidence regarding the *amount* of exposure to dust" attributable to Alfa Laval and, "critically, the *duration* of such exposure." *Id.* at 1176-77 (emphasis in original). The evidence must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* at 1176 (quoting *Lindstrom*, 424 F.3d at 492). "[M]ore is needed" than simply placing a defendant's products in the workplace and showing that the decedent was occasionally exposed to asbestos dust from those products. *Id*. at 1176-77.

There is evidence that Alfa Laval purifiers were installed in the aft engine rooms of the DYNAMIC, LOYALTY, ESTEEM, PLEDGE, and TUSCALOOSA (Dkt. # 394-2 at 15; Dkt. # 394-6 at 46; Dkt. # 394-7 at 17; Dkt. # 394-8 at 67), that DeLaval lube oil pumps serviced the main propulsion reduction gears installed on DYNAMIC, LOYALTY, ESTEEM, and PLEDGE (Dkt. # 394-2 at 15), and that the company provided a transfer pump installed on the TUSCALOOSA (Dkt. # 394-2 at 18). Plaintiffs have also provided evidence from which a reasonable jury could find that Mr. Wineland was exposed to significant levels of asbestos dust while working in the engine rooms of the five vessels.[3] The problem is that plaintiffs have not

---

[3] Based on his extensive experience in the Navy and at naval shipyards, including the supervision of enginemen during the relevant time frame aboard the USS BRUMBY and the USS NEWPORT NEWS, Captain Arnold Moore opines that Mr. Wineland repaired, assisted with the repair, observed the repair or cleaned up after the repair of the major machinery and many of the valves in the engine rooms of the DYNAMIC, LOYALTY, ESTEEM, PLEDGE, and TUSCALOOSA. Dkt. # 394-2 at 8. Captain Moore describes how these repairs would be carried out, including activities which would invariably create asbestos dust, including the removal of old, dried packing and gaskets and the cutting and installation of new packing and gasket materials Dkt. # 394-2 at 9 and 11. Plaintiffs' industrial hygienist, Steven Paskal, similarly opines that "it is virtually certain that [Mr. Wineland], and/or others in close proximity and/or in shared, enclosed airspaces, would have routinely removed and replaced gaskets and stem/shaft packing associated with . . . valves." Dkt. # 394-11 at 5. These activities would have exposed Mr. Wineland to an asbestos-containing aerosol that would remain suspended in air streams for extended periods of time at concentrations that ranged from hundreds to millions of times

ORDER GRANTING ALFA LAVAL'S
MOTION FOR SUMMARY JUDGMENT - 4

produced evidence from which a reasonable jury could conclude that asbestos dust from an Alfa Laval product, if any, was anything but minimal.

Plaintiffs do not dispute Alfa Laval's contention that Mr. Wineland was not exposed to its products during his service on the PLEDGE. Captain Moore acknowledged at his deposition that Mr. Wineland's service records show that he was assigned to the forward engine room on the PLEDGE, while the Alfa Laval purifier on that vessel was in the aft engine room. Dkt. # 314 at 10. Captain Moore could not say that Mr. Wineland was exposed to asbestos from an Alfa Laval product while on that vessel, and there is no other evidence to fill that gap. *Id*. With regards to exposure to asbestos in Alfa Laval products on the DYNAMIC, LOYALTY, ESTEEM, and TUSCALOOSA, plaintiffs rely on Captain Moore's opinion that "[e]nginemen took apart and cleaned diesel oil purifiers as a routine part of their duties. This was done before purifying diesel fuel oil while filling the day tanks." Dkt. # 394-2 at 16. At his deposition, Captain Moore clarified that this routine activity did not involve tearing the purifier apart or removing any gaskets, but rather "opening the hinged lid on top of the purifier, removing the spindle, and then removing it and wiping down the disc to remove impurities" and "sometimes" washing out the bowls. Dkt. # 314 at 11.

Alfa Laval has offered the opinion of an industrial hygienist, John W. Spencer, CIH, CSP, who participated in an exposure assessment designed to "evaluate airborne asbestos exposure to maintenance workers during the usual operation and ordinary maintenance of Alfa Laval

---

ambient pollution levels. Dkt. # 394-11 at 2-3 and 6. Gregory Bullinger, a shipmate of Mr. Wineland on the TUSCALOOSA, confirms that "work on the equipment in the engine room was regular, ongoing, and routine. We all removed and replaced packing and gaskets on the various equipment, including the valves, pumps, and ALCO diesel engines." Dkt. # 394-9 at 3.

ORDER GRANTING ALFA LAVAL'S
MOTION FOR SUMMARY JUDGMENT - 5

purifiers." Dkt. # 314 at 23. Mr. Spencer concluded that "the study of Alfa Laval purifiers found no asbestos exposure as a result of performing the cleaning tasks routinely performed on purifiers." Dkt. # 314 at 27. This opinion is uncontested. The only evidence plaintiffs offer on this point is the deposition testimony of John Rogers, a seaman on the USS NEWPORT NEWS between 1967 and 1971, who states that he removed asbestos-containing gaskets from an Alfa Laval product during his service on that vessel. Dkt. # 394-15 at 5-6. Mr. Rogers was a machinist, however, not an engineman like Mr. Wineland. There is no evidence that Mr. Wineland would have torn down or set up an Alfa Laval purifier. As for the frequency with which the machinists would perform activities that could disturb the asbestos-containing components of the purifiers, Mr. Rogers states that he removed the gaskets on an Alfa Laval purifier only once during his years on the NEWPORT NEWS during an overhaul and there was otherwise "no reason to disturb the gaskets or anything on the purifier in normal maintenance of these purifiers." Dkt. # 409 at 17-18. Mr. Rogers confirmed that the most common action taken with regards to a purifier was "[t]o clean the bowl, that's basically all the repair that we would do." Dkt. # 394-15 at 7.

At most, plaintiffs have raised an inference that asbestos dust could be released from an Alfa Laval product if it were torn down or overhauled. But such activities were apparently rare, and plaintiffs offer no evidence regarding the duration or amount of such exposure. Plaintiffs have not shown that the use and daily maintenance of the purifiers released any asbestos at all, much less a high enough level of asbestos dust to raise a reasonable inference that Alfa Laval's asbestos was a substantial factor in his injury. Plaintiffs have failed to raise a triable issue of fact regarding causation under maritime law.

ORDER GRANTING ALFA LAVAL'S
MOTION FOR SUMMARY JUDGMENT - 6

**C. Components Manufactured, Supplied, or Specified by Alfa Laval**

Because there is no evidence from which a reasonable jury could determine that the asbestos contained in Alfa Laval's products was a substantial contributing factor to Mr. Wineland's injuries, the Court need not determine whether the asbestos-containing components in place during his years of service were manufactured, supplied, or specified by Alfa Laval. Whatever the source of the components, they did not cause Mr. Wineland's mesothelioma under maritime law.

For all of the foregoing reasons, Alfa Laval's motion for summary judgment (Dkt. # 313) is GRANTED. Plaintiffs' motion for summary judgment on Alfa Laval's affirmative defenses (Dkt. # 356) is DENIED as moot

Dated this 19th day of July, 2021.

Robert S. Lasnik
United States District Judge

ORDER GRANTING ALFA LAVAL'S
MOTION FOR SUMMARY JUDGMENT - 7