UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLOTTE WINELAND, Individually, and SUSAN WINELAND, as Personal Representative of the Estate of JOHN DALE WINELAND, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, *et al.*,<br><br>Defendants. | Cause No. C19-0793RSL<br><br>ORDER GRANTING CLEAVER-BROOKS, INC.'S RENEWED MOTION FOR SUMMARY JUDGMENT (DKT. # 333) |

This matter comes before the Court on "Defendant Cleaver-Brooks, Inc.'s Renewed Motion for Summary Judgment." Dkt. # 333. Plaintiffs' decedent, John Dale Wineland, worked aboard a series of Navy ships and in Navy offices between 1963 and 1984. Plaintiffs allege that Mr. Wineland was exposed to asbestos contained in Cleaver-Brooks products while aboard the USS TUSCALOOSA. Mr. Wineland worked primarily in the engine rooms of the ships to which he was assigned, repairing and maintaining machinery and equipment such as diesel engines, pumps, air compressors, and valves. Mr. Wineland developed mesothelioma, an asbestos-related disease, and died in 2018. Plaintiffs assert that Cleaver-Brooks is liable for Mr. Wineland's illness and death under theories of negligence and strict liability.

Cleaver-Brooks seeks summary dismissal of all of plaintiffs' claims, arguing that

ORDER GRANTING CLEAVER-BROOKS, INC.'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 1

(a) plaintiffs have failed to produce admissible evidence from which a jury could reasonably conclude that Mr. Wineland's exposure to asbestos from Cleaver-Brooks products was a substantial contributing factor in his illness and death as required by maritime or Washington law and (b) it had no legal duty to ensure that products and replacement parts manufactured by others were reasonably safe and/or properly labeled. Having reviewed the memoranda, declarations, and exhibits submitted by the parties[1] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

**A. Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the

---

[1] This matter can be decided on the papers submitted in connection with this motion and the supplemental briefing regarding the applicability of maritime law. The parties' requests for oral argument are DENIED.

ORDER GRANTING CLEAVER-BROOKS, INC.'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 2

"mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

**B. Causation**

For the reasons set forth in the Order Granting Crane Co.'s Motion for Summary Judgment (Dkt. # 550), the Court finds that maritime law applies to plaintiffs' tort claims. To prevail on their negligence and strict liability claims, plaintiffs "must demonstrate, among other things, that [Mr. Wineland's] injuries were caused by exposure to asbestos that was attributable to [Cleaver-Brooks's] conduct." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016). *See also Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries*, __ U.S. __, 139 S. Ct. 986 (2019). To establish causation under maritime law, plaintiffs must show that Mr. Wineland's exposure to asbestos from Cleaver-Brooks products "was a substantial contributing factor in causing his injuries." *McIndoe*, 817 F.3d at 1174. Evidence of only minimal exposure to asbestos dust attributable to each defendant is insufficient: plaintiffs must provide "evidence regarding the *amount* of exposure to dust" attributable to Cleaver-Brooks and, "critically, the *duration* of such exposure." *Id.* at 1176-77 (emphasis in original). The evidence must show "a high enough

ORDER GRANTING CLEAVER-BROOKS, INC.'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 3

level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* at 1176 (quoting *Lindstrom*, 424 F.3d at 492). "[M]ore is needed" than simply placing a defendant's products in the workplace and showing that the decedent was occasionally exposed to asbestos dust from those products. *Id.* at 1176-77.

There is evidence that the distilling plant aboard the TUSCALOOSA was provided by Cleaver-Brooks' predecessor, Aqua Chem. Dkt. # 414-2 at 19; Dkt. # 414-7 at 12, 14-15. Compressed asbestos sheet gaskets were used to seal internal components in the distilling plant. Dkt. # 414-2 at 19. In addition, "[t]he Navy APL sheet also records Aqua Chem manufactured a 10 gallon per minute centrifugal pump installed on TUSCALOOSA." Dkt. # 414-2 at 19. *See also* Dkt. # 414-7 at 21-23. Finally, there is evidence from which a reasonable jury could find that Mr. Wineland was exposed to significant levels of asbestos dust while working in the engine room of the TUSCALOOSA.[2]

Plaintiffs have not, however, produced evidence from which a reasonable jury could

---

[2] Based on his extensive experience in the Navy and at naval shipyards, including the supervision of enginemen during the relevant time frame aboard the USS BRUMBY and the USS NEWPORT NEWS, Captain Arnold Moore opines that Mr. Wineland was likely to have repaired or closely supervised the repair of the machinery installed in the engine room of the TUSCALOOSA. Dkt. # 414-2 at 8. Captain Moore describes how these repairs would be carried out, including activities which would invariably create asbestos dust, including the removal of old, dried packing and gaskets and the cutting and installation of new packing and gasket materials Dkt. # 414-2 at 9. Plaintiffs' industrial hygienist, Steven Paskal, similarly opines that "it is virtually certain that [Mr. Wineland], and/or others in close proximity and/or in shared, enclosed airspaces, would have routinely removed and replaced gaskets and stem/shaft packing associated with . . . other equipment." Dkt. # 414-13 at 5. These activities would have exposed Mr. Wineland to an asbestos-containing aerosol that would remain suspended in air streams for extended periods of time at concentrations that ranged from hundreds to millions of times ambient pollution levels. Dkt. # 414-13 at 2-3 and 6. Gregory Bullinger, a shipmate of Mr. Wineland on the TUSCALOOSA, confirms that "work on the equipment in the engine room was regular, ongoing, and routine. We all removed and replaced packing and gaskets on the various equipment, including the valves, pumps, and ALCO diesel engines." Dkt. # 414-11 at 3.

ORDER GRANTING CLEAVER-BROOKS, INC.'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 4

conclude that Mr. Wineland suffered a substantial exposure to asbestos dust from Cleaver-Brooks products. There is no evidence regarding where the Cleaver-Brooks products were installed on the TUSCALOOSA, making it impossible to determine to what extent Mr. Wineland was exposed to the products or the asbestos in those products. While it is entirely possible that the distilling plant and centrifugal pump were maintained, repaired, and/or overhauled while Mr. Wineland served aboard the TUSCALOOSA between July 1972 and December 1974, there is no indication that Mr. Wineland was involved in or proximal to those activities, how frequent such activities might have been, or whether they involved the disturbance of asbestos-containing components. It is plaintiff's burden to provide evidence showing "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *McIndoe*, 817 F.3d at 1176 (quoting *Lindstrom*, 424 F.3d at 492). "[M]ore is needed" than simply placing a defendant's products in the workplace and showing that the decedent was occasionally exposed to asbestos dust from those products. *Id*. at 1176-77. Absent "evidence regarding the *amount* of exposure to dust" attributable to Cleaver-Brooks and, "critically, the *duration* of such exposure," (*Id.* at 1176-77 (emphasis in original)), a jury would have to speculate as to whether asbestos from Cleaver-Brooks products "was a substantial contributing factor in causing his injuries." *Id.* at 1174.

**C. Duty**

The parties generally agree that an original equipment manufacturer faces liability for component parts it installs in and supplies with its products, as well as for replacement parts it manufactures and supplies. A manufacturer may also owe a duty with regards to replacement parts or ancillary products (such as insulation) manufactured and sold by third-parties, but only if

the manufacturer in some way invites or requires the integration of the third-party product. *See DeVries*, 139 S. Ct. at 995 (holding that, under maritime law, original equipment manufacturers have a duty to warn "only when their product *requires* a part in order for the integrated product to function as intended") (emphasis in original); *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 414-15 (2012) (distinguishing cases in which no duty to warn was found on the ground that the manufacturers' products in those cases did not require that asbestos be used in conjunction with the products, were not specifically designed to be used with asbestos, and would not, by their very nature, necessarily involve exposure to asbestos); *Woo v. Gen. Elec. Co.*, 198 Wn. App. 496, 508 (2017) (finding a triable issue regarding duty where the product required insulation, gaskets, and packing to function as designed, the manufacturer knew that only asbestos-containing insulation, gaskets, and packing were available, and the manufacturer provided precut asbestos containing gaskets with the product and generally purchased and field-installed insulation to factory specifications).

Plaintiffs argue that Cleaver-Brooks should face liability for its failure to warn of the hazards of asbestos-containing replacement parts supplied by third-parties because Cleaver-Brooks was aware that the asbestos components in its products would wear out and that asbestos-containing replacements were necessary for the equipment to function as designed. Dkt. # 413 at 18. Evidentiary support for this argument is lacking. The relevant naval records, as interpreted and summarized by Captain Arnold Moore, show only that Cleaver-Brooks' distilling plant was manufactured with compressed asbestos sheet gaskets to seal internal components. Dkt. # 414-2 at 19. These facts relate to products manufactured and/or supplied by Cleaver-Brooks: none of them relates to third-party replacement parts, suggests that any particular

ORDER GRANTING CLEAVER-BROOKS, INC.'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 6

Cleaver-Brooks's product was designed to work only with asbestos-containing products, or raises an inference that Cleaver-Brooks required the use of asbestos-containing replacement parts. The problem is not with plaintiffs' theory of liability, but with their proof. *See, e.g., Devries*, 139 S. Ct. at 995-96 ("Courts have determined that [a duty to warn of the dangers of third-party products arises] in certain related situations, including when: (i) a manufacturer directs that the part be incorporated; (ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part; or (iii) a product would be useless without the part. In all of those situations, courts have said that the product in effect requires the part in order for the integrated product to function as intended. We agree.") (internal citations omitted).

Plaintiffs have failed to provide evidence from which a reasonable jury could conclude that Cleaver-Brooks is liable for any asbestos-containing replacement part or ancillary product that was hypothetically manufactured by a third party and integrated into a Cleaver-Brooks product installed on the USS TUSCALOOSA.

//

//

//

ORDER GRANTING CLEAVER-BROOKS, INC.'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 7

Plaintiffs have failed to raise a triable issue of fact regarding causation or a duty to warn under maritime law. For all of the foregoing reasons, Cleaver-Brooks's motion for summary judgment (Dkt. # 333) is GRANTED. Plaintiff's motion for summary judgment regarding Cleaver-Brooks's affirmative defenses (Dkt. # 361) is DENIED as moot.

Dated this 5th day of August, 2021.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING CLEAVER-BROOKS, INC.'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 8