UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLOTTE WINELAND, Individually, and SUSAN WINELAND, as Personal Representative of the Estate of JOHN DALE WINELAND, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, *et al.*,<br><br>Defendants. | Cause No. C19-0793RSL<br><br>ORDER GRANTING CARRIER CORPORATION'S AMENDED MOTION FOR SUMMARY JUDGMENT (DKT. # 427) |

This matter comes before the Court on "Defendant Carrier Corporation's Amended Motion for Summary Judgment." Dkt. # 427. Plaintiffs' decedent, John Dale Wineland, worked aboard a series of Navy ships and in Navy offices between 1963 and 1984. Plaintiffs allege that Mr. Wineland was exposed to asbestos contained in Carrier products while aboard the USS TUSCALOOSA. Mr. Wineland worked primarily in the engine rooms of the various ships to which he was assigned, repairing and maintaining machinery and equipment such as diesel engines, pumps, air compressors, and valves. During his two-and-a-half years of service on the USS TUSCALOOSA, however, Mr. Wineland was assigned as the lead petty officer for the "A Gang," with responsibility for operating and maintaining the vessel's auxiliary equipment, including its refrigeration and air conditioning plants. Mr. Wineland developed mesothelioma,

ORDER GRANTING CARRIER CORPORATION'S
AMENDED MOTION FOR SUMMARY JUDGMENT - 1

an asbestos-related disease, and died in 2018. Plaintiffs assert that Carrier is liable for Mr. Wineland's illness and death under theories of negligence and strict liability.

Carrier seeks summary dismissal of all of plaintiffs' claims, arguing that plaintiffs have failed to produce admissible evidence from which a jury could reasonably conclude (a) that Mr. Wineland worked with or around a Carrier product or (b) that exposure to asbestos from Carrier products was a substantial contributing factor in his illness and death. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] having heard the arguments of counsel, and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact

---

[1] The Court has also considered the supplemental briefing regarding the applicability of maritime law. Carrier's authenticity objection to the ships' records is overruled.

ORDER GRANTING CARRIER CORPORATION'S
AMENDED MOTION FOR SUMMARY JUDGMENT - 2

genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

For the reasons set forth in the Order Granting Puget Sound Commerce Center's Motion for Summary Judgment (Dkt. # 536) and the Order Granting Crane Co.'s Motion for Summary Judgment (Dkt. # 550), the Court finds that maritime law applies to plaintiffs' tort claims. To prevail on their negligence and strict liability claims, plaintiffs "must demonstrate, among other things, that [Mr. Wineland's] injuries were caused by exposure to asbestos that was attributable to [Carrier's] conduct." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016). *See also Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries*, __ U.S. __, 139 S. Ct. 986 (2019). To establish causation under maritime law, plaintiffs must show that Mr. Wineland's exposure to asbestos from Carrier products "was a substantial contributing factor in causing his injuries." *McIndoe*, 817 F.3d at 1174. Evidence of only minimal exposure to asbestos dust attributable to a defendant is insufficient: plaintiffs must provide "evidence regarding the *amount* of exposure to dust" attributable to Carrier and, "critically, the *duration* of such exposure." *Id.* at 1176-77

ORDER GRANTING CARRIER CORPORATION'S
AMENDED MOTION FOR SUMMARY JUDGMENT - 3

(emphasis in original). The evidence must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* at 1176 (quoting *Lindstrom*, 424 F.3d at 492). "[M]ore is needed" than simply placing a defendant's products in the workplace and showing that the decedent was occasionally exposed to asbestos dust from those products. *Id.* at 1176-77.

There is evidence that Carrier products containing asbestos were on the USS TUSCALOOSA while Mr. Wineland was assigned to the vessel. Carrier manufactured the refrigeration and air conditioning plants installed on the vessel, and both plants utilized asbestos-containing gaskets. Dkt. # 513 at 2. The plants were enclosed in their own compartments. Dkt. # 428 at 130. The user manuals for the refrigeration and air conditioning plants encouraged the use of replacement parts from Carrier, and until the late 1970s, the Navy replaced wear items, such as asbestos-containing gaskets, with the type of part called out in the original manufacturer's drawings and technical manuals. Dkt. # 444-3 at 27; Dkt. # 513 at 4.

There is also evidence that Mr. Wineland worked with and around the Carrier products. In 1973, after attending the Navy school for Air Conditioning and Refrigeration in San Diego, California, Mr. Wineland was assigned as the lead petty officer of "A Gang" with "the responsibility of maintaining the air conditioning and refrigeration equipment on board" the TUSCALOOSA, "as well as all the other auxiliary and deck machinery." Dkt. # 510-3 at 5; Dkt. # 510-5 at 85. His evaluation from the relevant time frame states that Mr. Wineland "has an excellent working knowledge of air conditioning and refrigeration and ships' auxiliary machinery" and "showed an uncommon determination to keep his equipment operational and responded to the needs of his shipmates in an outstanding and timely manner." Dkt. # 510-5 at

ORDER GRANTING CARRIER CORPORATION'S
AMENDED MOTION FOR SUMMARY JUDGMENT - 4

85. The evaluator noted that "Petty Officer Wineland gets the most out of his men by working with them and training them as they work . . . ." Dkt. # 510-5 at 86. Mr. Wineland was assigned to the A Gang for approximately eighteen months.

Thus, there is evidence from which a reasonable jury could conclude that Mr. Wineland worked with and around Carrier equipment and that he performed or closely supervised work on the equipment.[2] The question, then, is whether a reasonable jury could conclude that Mr. Wineland was exposed to asbestos from Carrier products and that the exposure "was a *substantial contributing factor* to his injuries." *McIndoe*, 817 F.3d at 1176 (emphasis in original, citation omitted). Based on the existing record, the jury would have to speculate whether the work Mr. Wineland performed (or closely supervised) on the Carrier air conditioning and refrigeration plants on the TUSCALOOSA involved the removal or replacement of asbestos-containing gaskets, the frequency and duration of such exposure, and whether the exposure was substantial. During the eighteen months during which Mr. Wineland was part of the A Gang, he was responsible for all of the auxiliary (*i.e.*, outside-the-engine room) equipment on the TUSCALOOSA. While this assignment obviously included the Carrier air conditioning and refrigeration plants, there is no reason to suspect that time spent on the Carrier equipment was substantial in relation to all of the other equipment under his care, no evidence that work

---

[2] Plaintiffs' industrial hygienist, Steven Paskal, opines that the removal and replacement of asbestos-containing gaskets would have exposed Mr. Wineland to an asbestos-containing aerosol that would remain suspended in air streams for extended periods of time at concentrations that ranged from hundreds to millions of times ambient pollution levels. Dkt. # 510-12 at 2-3 and 5-6. Plaintiffs' medical expert, David Y. Zhang, opines that the number of asbestos fibers released when removing gaskets exceeds OSHA's highest level of exposure to which an employee may be exposed without incurring the risk of adverse health effects (the 8-hour total weight average ("TWA") permissible exposure limit ("PEL")). Dkt. # 510-14 at 21.

ORDER GRANTING CARRIER CORPORATION'S
AMENDED MOTION FOR SUMMARY JUDGMENT - 5

performed on the Carrier equipment generated asbestos dust, and no evidence regarding the maintenance schedules or activities that could inform that analysis. Absent more, a reasonable jury could not find that exposure to asbestos from Carrier's equipment was a substantial contributing factor to Mr. Wineland's mesothelioma. *McIndoe*, 817 F.3d at 1176.

Plaintiffs have failed to raise a triable issue of fact regarding causation under maritime law. For all of the foregoing reasons, Carrier's motion for summary judgment (Dkt. # 427) is GRANTED. Plaintiffs' motion to strike Carrier's affirmative defenses (Dkt. # 360) is DENIED as moot.

Dated this 8th day of October, 2021.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING CARRIER CORPORATION'S
AMENDED MOTION FOR SUMMARY JUDGMENT - 6